BANK OF BELTON and Frank Blair, Jr., Appellants,

v.

STATE BANKING BOARD and State of Missouri, et al., Respondents.

No. KCD 27817.

Missouri Court of Appeals, Kansas City District.

May 31, 1977.

Motion for Rehearing and/or Transfer Denied June 27, 1977.

Application to Transfer Denied Sept. 12, 1977.

James L. Swarts, Jack C. Terry, Independence, for appellants.

Irven L. Friedhoff, Gen. Counsel, Tony K. Vollers, Asst. Gen. Counsel, Div. of Finance, Jefferson City, for respondents.

Before SHANGLER, P. J., and O'LEARY, SMITH and HANNA, Special Judges.

SHANGLER, Presiding Judge.

This appeal presents a wattlework of bank regulation statutes in apparent conflict.

The litigation stems from an order of the Commissioner of Finance to grant the United Missouri Bank of Hickman Mills [UMB] a facility at Highway 150 and U. S. Highway 71 in Kansas City, Missouri. The grant of application was preceded by the response to the questionnaire from the Commissioner of Finance by the Bank of Belton and its president [appellants here] that they opposed the UMB application. After the grant of the facility by the Commissioner, the Bank of Belton and president gave timely notice of appeal to the State Banking Board but were refused review on the general conclusion that the Board was without jurisdiction under § 361.094 to determine by appeal the grant by the Commissioner of Finance of an application for a bank facility.[1]

The appellants then brought a petition for judicial review of the Banking Board order of dismissal before the circuit court. That attempt at review was also dismissed

---

1. § 361.094, RSMo 1969, establishes procedures for review of orders by the Commissioner of Finance for approval or denial of applications for the *incorporation* or *relocation* of banks.

on the grounds (1) that the Bank of Belton, as a mere competitor of bank facility granted UMB lacked standing to maintain an appeal before the circuit court, and (2) the Banking Board was without authority under § 362.107 to review the approval of a facility application by the Commissioner of Finance.[2]

## I

## STANDING OF A COMPETITOR BANK FOR JUDICIAL REVIEW

■ The orders of the State Banking Board are made "subject to judicial review as provided by law". § 361.095, RSMo 1969. The provisions of law [§ 536.100 of the Administrative Procedure Act] accord standing for judicial review from a final administrative order to:

[a]ny person . . . who is aggrieved by a final decision in a contested case, whether such decision is affirmative or negative in form . . . unless some other provision for judicial review is provided by statute.

The clear language of the full text of § 536.100 spells out two conditions precedent to a standing for judicial review of an administrative order: (1) exhaustion of all administrative remedies provided by law and (2) aggrievement by a final administrative decision. *Kostman v. Pine Lawn Bank and Trust Co.*, 540 S.W.2d 72, 75 (Mo. banc 1976). This statute accommodates the constitutional requirement that final decisions of a judicial nature by an administrative body which affect private rights shall be subject to direct review by the courts. Article 5, § 22 of the Missouri Constitution (1945).

■ Bank of Belton has exhausted all available administrative remedies, so the question remains whether appellants are aggrieved by the decision of the Board within the meaning of § 536.100. There can be little question that a bank is aggrieved by a decision to allow a competitor facility to operate within the same trade area. The position of Belton Bank falls within the definition in *Hertz Corporation v. State Tax Commission*, 528 S.W.2d 952 (Mo. banc 1975), l. c. 954[2] that a party is aggrieved when the judgment operates prejudicially and directly—with immediate consequence—upon a personal or property right or interest. See, also, *State ex rel. Pruitt-Igoe Dist. Com. Corp. v. Burks*, 482 S.W.2d 75, 78[2] (Mo.App.1972). The economic interest Belton Bank seeks to protect against the administrative order which allows UMB a facility in competition falls within the zone of interests protected by Article 5, § 22 of the Missouri Constitution as defined in § 536.100. *Association of Data Processing Service Org., Inc. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

The petition for judicial review by Belton Bank in the circuit court reveals that from the outset of the Commissioner of Finance questionnaire, appellants opposed the grant of the bank facility to UMB. The petition leaves no doubt that the opposition rests on the ground that the grant of the facility application will result in an increased competition for banking business custom. The law favors free competition among banks, but within a system of regulation. *Suburban Bank of Kansas City v. Jackson County State Bank*, 330 S.W.2d 183, 187 (Mo.App. 1959). That principle is best served by the grant of standing to a competitor adversely affected by new competition authorized by administrative decision. Davis, Administrative Law Treatise, § 22.11 (1958); *State ex rel. Consumers Public Service Co. v. Public Service Commission*, 352 Mo. 905, 180 S.W.2d 40, 46[6–8] (banc 1944).

The respondent contends, nevertheless, that the banking laws deny a mere competitor—even though otherwise aggrieved—status for judicial review of a final determi-

---

**2.** § 362.107 authorizes a bank or trust company, upon approval by the Commissioner of Finance, to operate a *bank facility* separate from the banking house, and undertakes to establish a means of review from the action of the Com-

missioner. The language of this section, which we rescript at a more appropriate point of reference, gives rise to the apparent ambiguity later defined.

nation of the State Banking Board. The authorities cited by the parties on this point do not bear on the issue.

Belton Bank relies on *Marshfield Community Bank v. State Banking Board*, 496 S.W.2d 17 (Mo.App.1973) for the assertion that a competitor bank has the right to appeal a Banking Board decision. That case, however, involved the right of a dissatisfied *applicant* rather than a *competitor* for judicial review from such a decision, and does not apply to these facts (l. c. 22[6]).

State Banking Board relies on *State ex rel. Rouveyrol v. Donnelly*, 365 Mo. 686, 285 S.W.2d 669 (banc 1956) and *State ex rel. Belle-Bland Bank v. Donnelly*, 287 S.W.2d 872 (Mo.1956) for the view that a competitor bank has no right to judicial review from an administrative issuance of a new bank charter, much less a new facility. These cases were both decided under banking laws which were replaced in 1955 by the legislation now in effect. Each case involves an application for a writ of certiorari by a competitor bank for judicial review of the grant of new bank charter by the Board of Appeals.[3] Under the ante-1955 laws, provisions for judicial review of Board of Appeals decisions were expressly governed by § 386.510 RSMo 1949 and incorporated the review procedures of the Public Service Commission into the banking statutes. That statute provided:

> The commission and each party to the action or proceeding before the commission shall have the right to appear in the review proceedings [in the circuit court].

In *Rouveyrol*, the proposed incorporators of a bank appealed denial by the Commissioner of Finance of the charter and University Bank intervened before the Board of Appeals to oppose the grant of charter. The Board reversed the order of the Commissioner and allowed the new charter. University Bank moved for rehearing before the Board but was denied. University Bank then applied in the circuit court for review by writ of certiorari, but was denied because under the banking laws then extant only an applicant was a *party* to such proceedings within § 386.510 and there was no provision for intervention by those with other interests. 285 S.W.2d at 676[12–14]. *Belle-Bland, supra,* relies on *Rouveyrol* to reach the same conclusion on a similar state of facts. These cases do not preclude a competitor bank standing for judicial review on the basis of lack of an interest, but rather on lack of legal authority.

As we have shown, § 536.100 now controls the right to review, and that section has been construed to accord that right to "any person, party or not, who can show himself to be aggrieved by the decision". *State ex rel. Pruitt-Igoe Dist. Com. Corp. v. Burks*, 482 S.W.2d 75, 78[1] (Mo.App.1972).

The respondent State Banking Board contends nevertheless that the law has less concern for the right of a competitor bank to review an order to operate a limited service facility within the trade area than a grant of a full service bank. This contention refers to the limited services which a facility may provide. When enacted in 1959, the facility statute limited these services to payment of checks, receipt of deposits, withdrawal of deposits, and making change. § 362.107(2)(1) (L.1959 H.B. No. 568 §§ 1, 2). The statute was later amended to allow the facility to make exchange, issue money orders, maintain safe deposit boxes and receive loan payments. § 362.107(1) RSMo Supp.1975. The position of the State Banking Board is that the competitive impact of a limited facility is too slight to justify judicial review of the administrative decision to allow its operation. This argument is refuted by the express language of § 362.107(3)(3) which requires the Commissioner[4] in evaluation of a facility application to consider "[w]hether other banking institutions will be seriously injured by the approval of the application for the facility at the location specified".

---

**3.** The Board of Appeals was replaced by the State Banking Board by enactment of § 361.097 in 1955.

**4.** The designation *Commissioner of Finance* was replaced by *Director of Finance* in the 1976 statutory revision.

We conclude that Belton Bank is a *person aggrieved* under § 536.100 and if otherwise authorized by the banking laws—is entitled to judicial review of the grant of the facility to competitor UMB.

## II

## JURISDICTION OF STATE BANKING BOARD

The second ground upon which the circuit court dismissed the Belton Bank petition for review was that the State Banking Board was without authority under § 362.-107 to hear an appeal from the decision of the Commissioner of Finance to grant an application for a facility. The text of § 362.107(4) [Amended by Laws 1971] relied on by the circuit court to deny jurisdiction to the review sought by Belton Bank presents the first statutory incongruity:

If the director of finance is not satisfied and *denies* the application [for facility], the action of the director in *granting or denying* any such application may be appealed from and be reviewed in the same manner as action by him pursuant to section 362.040 may be appealed from and reviewed. [Emphasis supplied.]

This section can be read to authorize that if the Commissioner [Director] shall *deny* the application for facility such *grant* may be appealed from in the manner allowed by § 362.040. This apparent nonsense is compounded by the reference to § 362.040 which provides an appeal from the *denial* of a new bank charter.

The disclaimer of jurisdiction by the circuit court judgment as we have shown, rests on the express ground that under § 362.107(4) the State Banking Board was without authority to review the *grant* of an application for facility. The respondent State Banking Board, for itself, found no jurisdiction to review the grant of a facility on the apparent premise that § 361.094 which constitutes the Board as the agency for review confines that power to new banks and relocations of banks, without mention of facility. The decision of neither tribunal refers to the statutory provision used by the other to reach decision. We read the judgment of the circuit court as the search and determination of its own jurisdiction and conclude that the issues of law raised by the Board and court are both before us.

This composite jurisdictional question appears: In view of § 361.094 which authorizes appeal to the State Banking Board from denial or grant of new bank charters or bank relocations [without mention of facilities], and the anomalous provision of § 362.107(4) for appeal from decisions on facilities—Is there appeal to the Board from an order of the Commissioner to grant a facility?

The answer is found in the history of the banking laws which show purpose and method through apparent discordance.

The banking laws were extensively revised in 1955, and the State Banking Board was created and empowered to hear appeals of an applicant who had been *denied* bank incorporation or relocation by the Commissioner of Finance [§ 361.094, L.1955]. It was not until 1967 that § 361.094 was amended to allow appeals by other banks from the *grant* of incorporation or relocation.

In 1959, § 362.107 [the statute cited by the circuit court to deny jurisdiction for the appeal of Belton Bank] was enacted to permit a bank to provide drive-in or banking service at one [later amended to two] facility separate and apart from the main bank. § 362.107(1). As we have discussed, such a facility may serve only limited functions. [See, *Central Bank of Clayton v. State Banking Board of Missouri*, 509 S.W.2d 175, 184[3] (Mo.App.1974)]. The application for such facility requires the Commissioner to consider, inter alia, the effect of the grant on the other banks in the area.

Belton Bank contends that § 361.094 intended to establish appeal jurisdiction to the Board from decisions on facility applications as well as from grants or denials of bank charters and relocations, and so considers unreasonable any assumption that the legislature created a right to appeal, but limited that right to only one of the

parties. The appellant reminds us again that both §§ 362.040 and 361.094 allow appeal from the *grant or denial* of incorporation or relocation, and so prove a similar intention for an application for facility.

State Banking Board argues, on the one hand, that the failure to include facility decisions within § 361.094 when it was amended in 1967 proves the legislature intended no jurisdiction to the Board from such matters. The respondent Board concedes, for argument, on the other hand, some appeal jurisdiction under § 362.107(4) from decisions on facilities, but limited to *refusals* of an application only. This position argues that the word *granting* simply is not meant to be a part of § 362.107(4) as evidenced by its reference to § 362.040 which authorizes appeals only from refusals to certify a new bank.

For further emphasis the Board points out that in 1959 when § 362.107 was enacted only refusals to incorporate or relocate a bank were appealable. The failure of the legislature to give the Board jurisdiction of appeals from a facility application—the argument continues—was intentional, and reflects the minor impact a limited service facility would have on competitor banks. In sum, the Board considers it beyond conception that in 1959 the legislature should have intended to permit an appeal from the *grant* of a facility decision when no comparable right was allowed from the *grant* of a full service bank charter.

■ These statutes, and the contentions which reflect them, must be seen integrally to be of purpose. They were enacted *in pari materia* and, however imperfectly, express an important public policy. A court acts on the presumption that [*City of Joplin v. Joplin Water Works Company*, 386 S.W.2d 369, 373[5–8] (Mo.1965)]:

. . . the legislature never intends to enact an absurd law, incapable of being enforced, and on the principle that the reason of the law should prevail over the letter of the law, courts on numerous occasions, confronted with ambiguous or contradictory language, have adopted a construction which modifies the literal meaning of the words, or in extreme cases have stricken out words or clauses regarded as improvidently inserted, in order to make all sections of a law harmonize with the plain intent or apparent purpose of the legislature.

Other canons of construction allow a court to make sense out of a statute even though mistakes in writing, grammar, by misnomer or misdescription, or omissions obscure an otherwise discernible legislative intent. *State ex rel. Klein v. Hughes*, 351 Mo. 651, 173 S.W.2d 877, 880[8] (1943); *Tadlock v. Mooneyham*, 212 Mo.App. 573, 253 S.W. 1098, 1100[3–6] (1923).

■ The evident purpose of the legislature in the enactment of § 362.107 which allows the Commissioner to grant or deny application by a bank to maintain or relocate a facility is to bring that activity into the regulated scheme for competition already formulated for new banks and relocations by §§ 362.020—362.030. The express terms of § 362.107(3)—which precede the review provision in contention—require the Commissioner to determine the application for facility on considerations of the *needs and welfare of the community, the financial strength of the parent bank,* and *whether other banks will be seriously injured by the competition.* These very desiderata to protect against insolvency—on the one hand—and monopoly—on the other—are those which also determine the grant or denial of a bank charter or request for relocation. §§ 362.030 and 362.325(7); *Central Bank of Clayton v. State Banking Board of Missouri, supra,* l. c. 184–5.

The banking laws advance this basic public purpose by provisions [§§ 361.094 and 361.095] that one adversely affected by the grant or denial of charter or relocation may appeal to the State Banking Board. This administrative review is an antecedent and necessary step for access to the courts under § 536.100 as the ultimate conservator of these legislative values.

The provisions of § 362.107(3) that the Commissioner consider the welfare of the community, the effect on other banks in the area and the fiscal ability of the main bank

to support the facility, to arrive at a decision indicate that the legislature attaches the same importance to a facility as to a new bank. It follows, therefore, that the grant or denial of a facility by the Commissioner affect important interests of other banks in the area as do the grant or denial of new incorporations or relocations. It is altogether congruous to expect that to perfect this legislative policy, review provisions would be intended for a facility compatible with those allowed a bank. As we see it, the expansion of jurisdiction for the State Banking Board in 1967 to allow review of grant as well as denial of incorporation [§ 361.094] was legislative recognition that ex parte proceedings before the Commissioner—without review of a grant—was not sufficient protection for the interests of competitor banks. That same consideration affects the enactment of § 362.107(4) now in contention before us. To say—as does the Board—that jurisdiction to review under § 362.107(4) comes only to an applicant for a denial of a facility but not to a competitor whose solvency may be threatened by a grant of facility belies the basic legislative purpose to maintain a healthy system of banks.

These discernments of legislative purpose lead us to conclude that the enactment of § 362.107(4) was not meant to be absurd but to provide review to a competitor bank to the State Banking Board from a *grant* by the Commissioner of a facility application. This construction brings § 362.107(4) into harmony with one of the primary purposes of the banking laws: to maintain the solvency of existing banks by allowing a competitor bank to contest the grant of new competition.

We give effect to the reason of the law over the letter of the law by means of those maxims of construction which allow a court to correct, insert or delete words—even phrases—to avoid absurdity and give meaning to a statute. *Bingham v. Birmingham*, 103 Mo. 345, 15 S.W. 533, 535 (1891); *City of Kirkwood v. Missouri State Board of Mediation*, 478 S.W.2d 690, 695[6–7] (Mo. App.1972). Accordingly, we excise the first phrase of § 362.107(4), set off by brackets,

as improvidently included, so that the operative statute as underscored reads:

[If the director of finance is not satisfied and denies the application] *[T]he action of the director in granting or denying any such application may be appealed from and be reviewed in the same manner as action by him pursuant to section 362.040 may be appealed from and reviewed.*

Our conclusion that Belton Bank has standing and comes within the operation of § 362.107(4) for review to the State Banking Board from the grant of a facility decides this appeal.

Accordingly, the cause is reversed and remanded with directions to remand to the State Board for further proceedings.

All concur.