The CITY OF EUREKA, Missouri, Windsor Real Estate and Mortgage Company and Evangelical Deaconess Society, d/b/a Deaconess Hospital, Relators,

v.

The Honorable Arthur LITZ, Respondent.

No. 47221.

Missouri Court of Appeals, Eastern District, Division Two.

Sept. 20, 1983.

Jerome Wallach, St. Louis, Albert A. Michenfelder, Jr., Andrew R. Kasnetz, Clayton, for relators.

H. Kent Munson, St. Louis, for respondent.

KAROHL, Judge.

This is an original proceeding in prohibition. Relators, the City of Eureka, Windsor Real Estate and Evangelical Deaconess Society (Deaconess) sought to prevent respondent circuit judge from taking any further action in the cause entitled *Donald Brewer and St. Joseph Hospital of Kirkwood v. City of Eureka,* No. 483521. Respondent denied relators' motion to dismiss for lack of jurisdiction and lack of standing. We make our preliminary order in prohibition absolute.

On October 27, 1982, Windsor and Deaconess filed a petition with the city of Eureka seeking a special use permit for a satellite medical clinic. The proposed site of the clinic was zoned commercial, and under city ordinances, a special use permit was necessary. The clinic would provide general medical services and would be staffed by doctors and technicians.

The City Planning and Zoning Commission held a public hearing on the permit application on November 10, 1982. Neither Donald Brewer nor a representative of St. Joseph Hospital of Kirkwood (plaintiffs)

made any comments at the hearing. The record does not reflect whether plaintiff Brewer attended the meeting. The commission thereafter recommended to the mayor and Board of Aldermen of Eureka that the permit be granted.

The regular evening meeting of the Board of Aldermen was scheduled for December 21, 1982. Earlier that day, plaintiffs brought a petition in the circuit court for a temporary restraining order, preliminary and permanent injunction, claiming that the Board of Aldermen had not heard all of the evidence or read the full record of the public hearing and was precluded by § 536.080 RSMo 1978 from rendering a final decision. That evening, however, the Board of Aldermen met and granted the special use permit.

Plaintiffs filed a "First Amended Petition for Preliminary Injunction and Permanent Injunction" on January 4, 1983. The petition alleged that approval of the special use permit was contrary to state law since § 536.080, providing that agencies that render final decisions must hear all of the evidence or read the full record of the public hearing, was not complied with. The petition further alleged that portions of the city zoning ordinance governing the issuance were unconstitutional. Plaintiffs claimed to have no adequate remedy at law and prayed for an injunction to prevent the city from taking any further action with respect to the special use permit.

Windsor and Deaconess intervened, filed an answer, and joined in Eureka's motion to dismiss. The motion to dismiss claimed that plaintiffs failed to bring an action for judicial review of the Board's decision within 30 days, as required by § 536.110, and that the plaintiffs lacked standing in that they failed to allege that they had a specific and legally cognizable interest in the subject matter of the administrative decision.

■ On March 17, 1983, respondent held a hearing on the motion for preliminary injunction and the motion to dismiss. Respondent denied both motions on March 25, 1983. Relators sought a writ of prohibition based on the same grounds as their motion to dismiss. We issued a preliminary order in prohibition. Prohibition will lie to prevent a court from acting outside of its jurisdiction. *State ex rel. Wasson v. Schroeder,* 646 S.W.2d 105, 106 (Mo. banc 1983).

Relators first complain that plaintiffs' petition fails to comply with § 536.110, requiring a petition for review to be filed within thirty days of notice of the decision. Although the petition was filed within thirty days, relators contend that it asks for an injunction, pleads no adequate remedy at law, and is thus not a petition for judicial review of an administrative decision, which is the exclusive remedy at law. Further, relators argue that the petition fails to properly state a constitutional claim.

■ Plaintiffs have failed entirely to preserve any constitutional argument. A party asserting the unconstitutionality of a statute or ordinance bears the burden of supporting that contention by at least relating his argument to the statute or ordinance and issue at hand. *Atkins v. Dept. of Building Regulations,* 596 S.W.2d 426, 434 (Mo.1980). To properly raise a constitutional question, plaintiffs are required to: (1) raise the constitutional question at the first available opportunity; (2) designate specifically the constitutional provision claimed to have been violated, such as by explicit reference to the article and section or by quotation of the provision itself; (3) state the facts showing the violation; and (4) preserve the constitutional question throughout for appellate review. *Gray v. City of Florissant,* 588 S.W.2d 722, 724 (Mo.App. 1979).

■ Plaintiffs' bare allegation that "said portions of said Zoning Ordinance are unconstitutional," fails to designate specifically the constitutional provision alleged to have been violated. The petition preserves no constitutional issue for review in the circuit court. *Gaffigan v. Whaley,* 600 S.W.2d 195, 197 (Mo.App.1980).

Plaintiffs' petition, if anything, can only be a petition for judicial review of an administrative decision. Even if we construe

the petition as such, however, plaintiffs have no standing to bring such a cause of action.

Section 536.100 provides that any person who has exhausted all administrative remedies and who is aggrieved by a final decision in a contested case, shall be entitled to judicial review as provided in §§ 536.100 to 536.140. The grant of a special use permit by the Board of Aldermen was a final administrative decision. *State ex rel. Steak n Shake, Inc. v. City of Richmond Heights,* 560 S.W.2d 373, 376 (Mo. App.1977). This is also a "contested case," as Eureka ordinance requires a hearing to be held for special use permits. *State ex rel. Wasson v. Schroeder,* 646 S.W.2d 105, 107 (Mo. banc 1983); *Missourians for Separation of Church and State v. Robertson,* 592 S.W.2d 825, 842–43 (Mo.App.1979).

For plaintiffs to be entitled to review of the Board's decision, they must be aggrieved persons, under § 536.100. To qualify as aggrieved persons, plaintiffs must demonstrate a specific and legally cognizable interest in the subject matter of the administrative decision and that the decision will have a direct and substantial impact on that interest. *Palmer v. St. Louis County,* 591 S.W.2d 39, 41 (Mo.App. 1979); *Stickelber v. Board of Zoning Adjustment,* 442 S.W.2d 134, 136–37 (Mo.App. 1969). The decision must operate prejudicially and directly upon plaintiffs' personal or property rights or interests and such must be immediate and not merely a possible remote consequence. *Hertz Corp. v. State Tax Commission,* 528 S.W.2d 952, 954 (Mo. banc 1975).

Whether plaintiffs have such a protectable interest is a matter for ad hoc determination by the courts under the given circumstances. *Stickelber v. Board of Zoning Adjustment,* 442 S.W.2d at 136. The question is one of law and depends upon a variety of considerations, including the nature and extent of the interest of the person who asserts status to contest the administrative action, the character of the administrative action, and the terms of the statute which enable the agency action. The determination, ultimately, rests on policy as well as law, so that which consideration predominates so as to allow or deny status for judicial review depends upon the discerned legislative values. *State ex rel. Schneider v. Stewart,* 575 S.W.2d 904, 909 (Mo.App.1978).

The First Amended Petition alleges only that plaintiff Brewer is a resident of the city of Eureka, and that St. Joseph Hospital, a not-for-profit corporation, is engaged in the business of providing hospital and related medical services to the residents of its service area, which includes the residents of the city of Eureka. The petition added, "Plaintiff St. Joseph Hospital of Kirkwood expends substantial sums annually to provide quality care to said residents." These are the sole allegations related to standing.

Plaintiffs fail to allege in their pleadings that they are aggrieved persons, and that they have any specific or legally cognizable interest in the grant of the special use permit to Windsor and Deaconess. Their vague allegation of "irreparable injury" demonstrates no direct, substantial, and immediate effect on any of plaintiffs' interests.

Plaintiff Brewer's status as a resident alone, without a showing of the effect of the decision on his property, will not suffice. To permit each member of the public who disagrees with such a decision to seek judicial review, would effectively destroy the legislative and administrative zoning structure. *Palmer v. St. Louis County,* 591 S.W.2d at 41–42. At the hearing on the motion to dismiss, Brewer testified that he was the administrative director of St. Joseph Hospital Laboratory and also screened cytological matters obtained through gynecological exams, a business independent of his hospital employment. He stated that the proposed clinic "*could* cause me to loose [sic] business." (emphasis added) This fails to show a direct and substantial impact on a legally cognizable interest, an immediate effect, or anything other than a possible or remote consequence.

[redacted] 

The allegations in the petition that St. Joseph expends money to provide health care to Eureka residents also fails to comply with the above standards to make a showing of aggrievement.

[redacted] At the hearing on the motion to dismiss, the Vice President of Planning of St. Joseph Hospital testified that St. Joseph treated about 1500 patients from the "area" of the proposed clinic. He thought that the new clinic would take away about $75,000 to $100,000 in emergency room visits. The area that he referred to however, consisted of the towns of Eureka, Pacific, and Fenton. The vice president could not narrow his figures down to only Eureka. The proposed clinic would be about fifteen miles from St. Joseph Hospital.

Plaintiffs' argument, although not made in their pleadings, is that they are entitled to standing to challenge the administrative decision since they would be competitors of the proposed clinic. On the basis of the pleadings alone, containing no allegations relating to standing, plaintiffs have failed to sustain their burden. *See State ex rel. Schneider v. Stewart,* 575 S.W.2d at 910.

Nevertheless, examining plaintiffs' contention that the status of competitor entitles them to standing, we find that plaintiffs still lack standing. Plaintiffs argue that since competitor banks have standing to challenge the State Banking Board's grant of a license to another bank under *Bank of Belton v. State Banking Board,* 554 S.W.2d 451 (Mo.App.1977), they should have standing as competitors to the proposed clinic.

In *Bank of Belton,* a bank brought an action for review of an administrative decision by the Director of Finance, granting a competitor bank the right to operate a banking facility within the same trade area. Although the court held that *Bank of Belton* was an "aggrieved" person under § 536.100, the court also stressed the regulated nature of the banking industry that would be furthered by granting standing to a competitor. In addition, the banking statute, § 362.107.3(3), requires the Director of Finance to consider whether other banking institutions will be seriously injured by the approval of a facility application at the location specified. 554 S.W.2d at 453–454. Finally, the court stated:

> We conclude that Belton Bank is a *person aggrieved* (emphasis in original) under § 536.100 and *if otherwise authorized by the banking laws*—(emphasis ours) is entitled to judicial review of the grant of the facility to competitor UMB.

554 S.W.2d at 455.

*Bank of Belton,* therefore, does not grant standing solely on the status of competitor, but also depended upon the legislative policy discerned from the banking statutes. Prior to change of the banking laws, a competitor bank did not have standing to challenge the grant of a facility to another bank. *State ex rel. Rouveyrol v. Donnelly,* 365 Mo. 686, 285 S.W.2d 669 (banc 1956). We can find no such clear legislative policy demanding consideration be given to competitor health care institutions before a special use permit can be granted.

Plaintiffs' general competitive interest therefore, will not establish standing. *Westborough Mall, Inc. v. City of Cape Girardeau,* 693 F.2d 733, 747 (8th Cir.1982) (under Missouri law); *Schmitt v. City of Hazelwood,* 487 S.W.2d 882, 888 (Mo.App. 1972).

[redacted] Plaintiffs have therefore failed to allege sufficient facts to establish that they have standing to invoke the court's jurisdiction. *Village of Claycomo v. City of Kansas City,* 635 S.W.2d 365, 367 (Mo.App.1982); *State ex rel. Schneider v. Stewart,* 575 S.W.2d 904, 910 (Mo.App.1978); *Schmitt v. City of Hazelwood,* 487 S.W.2d at 888–89. Only a person with legal standing can resort to the courts for relief from administrative action. The question of a person's legal standing to apply for judicial relief does not touch the merits of the suit but merely the authority of the court to entertain the action. *State ex rel. Rouveyrol v. Donnelly,* 285 S.W.2d at 678. Finding no authority for respondent to proceed, we

make our preliminary writ of prohibition absolute.

DOWD, P.J., and SIMON, J., concur.