**ST. JOSEPH'S HILL INFIRMARY, INC., Plaintiff-Respondent,**

v.

**Rabbi Herbert J. MANDL, et al., as members of the Missouri Health Facilities Review Committee, Non-appealing Defendants,**

and

**Pacific Care Center, Inc., Defendant-Appellant.**

**No. 47685.**

Missouri Court of Appeals, Eastern District, Division Four.

May 22, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 10, 1984.

Case Transferred to Supreme Court Sept. 11, 1984.

Case Retransferred to Court of Appeals Jan. 23, 1985.

Original Opinion Reinstated Jan. 29, 1985.

John W. Howald, Louis J. Weber and Floyd T. Norrick of Thurman, Smith, Howald, Weber & Bowles, Hillsboro, for defendant-appellant.

David M. Harris of Greensfelder, Hemker, Weise, Gale & Chappelow, P.C., St. Louis, for plaintiff-respondent.

Louren R. Wood, Asst. Atty. Gen., Jefferson City, Mo., for Rabbi Mandl, et al., The Missouri Health Facilities Review Committee.

SMITH, Judge.

Pacific Care Center, Inc. (defendant) appeals from the judgment of the trial court

holding void a certificate of need for a nursing home issued to it by the Missouri Health Facilities Review Committee (Committee) acting pursuant to Sec. 197.300 et seq. RSMo 1982 Cum.Supp. The petition upon which the trial court acted was filed by St. Joseph's Hill Infirmary, Inc. (plaintiff). The defendant's nursing home is pro- posed to be located in Pacific, Missouri. St. Joseph's operates two nursing homes within a 15 mile radius of the Pacific site and would be in competition with the proposed nursing home.

The trial court determined that (1) St. Joseph's had standing to bring this action, (2) the certificate of need was void because the Committee failed to prepare findings of fact and conclusions of law, and (3) the time for review mandated by Sec. 197.330 was complied with and the application was not approved by operation of law under that section. We conclude that the trial court erred in its determination of standing and accordingly reverse. In so doing we do not reach the remaining issues or determine the validity of the certificate of need.

The Missouri Certificate of Need Law (hereinafter CON) was enacted in 1979, in response to the National Health Planning and Development Act, 42 U.S.C.A. 300k et seq. and more specifically Secs. 300 m–6 and 300 n–1. The federal act requires that a designated state agency have the authority under state law to administer an acceptable certificate of need program. The act is not technically mandatory but it does establish an optional program which a state must implement in order to receive federal funds allocated by the act.

"The essence of the certificate-of-need program is the requirement that any proposed construction of or significant capital expenditure for health facilities in a state be certified to be necessary by the State Agency before it is offered. The program is intended to reduce unnecessary duplication in health care facilities and thereby, it is hoped, reduce the cost of health care to consumers." *Greater St. Louis Health Systems Agency v. Teasdale,* 506 F.Supp. 23 (E.D.Mo.1980) [1] l.c. 28.

The Committee is the designated state agency to administer the CON program. Also in the picture are health systems agencies (HSA) which are regional health planning organizations designated directly by the Secretary of Health and Human Services.

With this background we return to the state statute. When a new facility for health care is planned the person proposing to develop or offer the new institutional health service must submit a letter of intent to the Committee and a "request" to both the HSA and the Committee thirty days prior to filing the application for a certificate of need. Sec. 197.325. The Committee, within very restricted time frames, must process the application when made, cause notice to be given to "affected persons" and contiguous HSA's, hold public hearings if requested by any "affected person," consider recommendations by the appropriate HSA, make written findings of fact and conclusions of law, issue its approval or denial of the application, and serve its findings, conclusions, and decision on the applicant, the HSA and any "affected person" who has requested them. Sec. 197.330. "Affected person" is defined to mean "the person proposing the development of a new health care service, the public to be served, the health systems agency and health care facilities within the service area in which the proposed new health care service is to be developed." Sec. 197.305(1). Failure of the Committee to issue its decision within the time mandated by the statute constitutes approval of the application.[1] Sec. 197.335 provides:

"Within thirty days of the decision of the committee, the applicant or the health systems agency within whose area the new institutional health service is to be offered may file an appeal in accordance with the provisions of sections 161.-252 to 161.342, and Chapter 536, RSMo, provided, that venue of any appeal to the circuit court shall be in the county within which such health care service or facility is proposed to be developed."

The question of the standing of a competitor to appeal from the issuance of a certificate-of-need is one of first impression in this state. There are, however, cases dealing with other administrative decisions which provide guidance. Plaintiff here is clearly an "affected person" under the statute. As an "affected person" it is entitled

---

1. The question of when the clock begins to run—upon initial filing of the application or when it is deemed to be complete—was deter- mined by the trial court to be the latter. We are not reviewing that finding.

to notice and a public hearing on the application for a certificate-of-need. But that status does not in itself give plaintiff standing to appeal the decision of the committee. As stated in *State ex rel. Rouveyrol v. Donnelly*, 365 Mo. 686, 285 S.W.2d 669 (1956) [15–17] quoting from 73 C.J.S. Public Administrative Bodies and Procedure, § 176, p. 517:

> "Not every person who files a protest and is given an opportunity to be heard by the adminstrative agency has a right to appeal from an order of the agency, but whether a particular person has the right to contest administrative action is largely a question of law, dependent on a number of variable factors, including the nature and extent of his interest, the character of the administrative act and the terms of the statute."

The terms of the statute before us give the right of appeal solely to the applicant and the HSA for the area where the new service is to be offered. It does not grant such right to all "affected persons" which would include members of the public. It has consistently been recognized that while the public welfare is intended to be the controlling factor in administrative agency decisions, it was not intended that every citizen may participate in any case. If such participation, including rights of appeal, were allowed, it would prevent the agency from functioning efficiently. *State ex rel. Rouveyrol, supra*, [11]; *City of Richmond Heights v. Board of Equalization of St. Louis County*, 586 S.W.2d 338 (Mo. banc 1979) [5]. The statutory framework of the CON statute provides for an appeal by the applicant, which has a private interest, or by the area HSA, which exists to protect the public interest. We find no express authority under the statute for an appeal by plaintiff.

Plaintiff contends, however, that its right to appeal is guaranteed by Art. V, Sec. 18, Mo. Const. which provides:

> "All final decisions, findings, rules and orders on [sic] any administrative officer or body existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as provided by law; ..."

That constitutional provision has in turn been implemented by Sec. 536.100 RSMo 1978 as follows:

> "Any person who has exhausted all administrative remedies provided by law and who is aggrieved by a final decision in a contested case ... shall be entitled to judicial review thereof...."

A party is aggrieved when the judgment operates prejudicially and directly upon his personal or property rights or interests. Such operation must be immediate and not merely a possible remote consequence. *The Hertz Corporation v. State Tax Commission*, 528 S.W.2d 952 (Mo. banc 1975) [2]. The right or interest involved must be one the law protects. It must also act directly on an interest of the person who claims the right of review in a manner distinct from the effect on the general public. *State ex rel. Schneider v. Stewart*, 575 S.W.2d 904 (Mo.App.1978) [16, 17]. The definition of "aggrieved" found in these cases serves to define the "private rights" which must be affected to trigger the constitutional provision.

Generally speaking the "right" to be free from legitimate competition is not a right at all and is certainly not one protected by law. *State ex rel. Rouveyrol v. Donnelly, supra*, [1–4]; *City of Eureka v. Litz*, 658 S.W.2d 519 (Mo.App.1983) [12]; *Herman Glick Realty Co. v. St. Louis County*, 545 S.W.2d 320 (Mo.App.1976) [4]; *Schmitt v. City of Hazelwood*, 487 S.W.2d 882 (Mo.App.1972) [13]. We did recognize in *City of Eureka v. Litz, supra*, that a competitor may achieve the status of an "aggrieved person" based upon the legislative policy of the particular statute establishing the administrative review. This recognition was expressed in *Bank of Belton v. State Banking Board*, 554 S.W.2d 451 (Mo.App.1977) and *Farmer's Bank of Antonia v. Kostman*, 577 S.W.2d 915 (Mo.App.1979) [1–3]. Those cases arose under the licensing provisions of the banking statutes and because of certain parallels to the statutes now before us and the language of the *Belton* case, in particular, some review of the banking cases is warranted.

The Supreme Court addressed the standing of a competitor to appeal the granting of a banking license in *State ex rel. Rouveyrol v. Donnelly, supra*. The statutes then in force provided for review pursuant to the statutes pertaining to the Public Service Commission. Those statutes in turn limited those allowed to participate in appellate review to the commission and "each party to the action or proceeding before the commission." Sec. 386.510 RSMo 1949. Sec. 386.420 RSMo 1949 provided for intervention in the Commission

proceedings of "such corporations and persons as the commission may allow to intervene." Intervention gives a person the status of a party and must be based upon having such an interest in the outcome that participation in the proceedings is justified. The Supreme Court found that a competitor did not have a sufficient interest in a bank licensing proceeding to qualify as an interested person if the question of standing is determined by the Public Service Commission statutes. The Court then went further and held that the review procedures of Sec. 386.510 determine the kind and manner of review but that the parties entitled to review must be determined by the banking statutes. It found no authority in those statutes to grant a competitor standing to seek judicial review and no authority to allow intervention. In dealing with the provisions of Art. V, § 22 Mo. Const., the predecessor to Art. V, § 18 and identical in all parts here pertinent, the Court held that the minimum requirements of that provision were satisfied. The applicants for a license were the persons whose private rights might be affected and the commissioner and subsequently the board of bank appeals represented the general public interest in the exercise of the police power. *State ex rel. Rouveyrol v. Donnelly, supra,* [20]. That case was followed in *State ex rel. Belle-Bland Bank v. Donnelly,* 287 S.W.2d 872 (Mo.1956).

The predecessor of Sec. 536.100 RSMo 1978 was in effect at the time of the *Rouveyrol* decision. Laws 1945, p. 1504 § 10. It provided that a person who was aggrieved by a final decision in a contested case "shall be entitled to judicial review thereof, as provided in this section, unless some other provision for judicial review is provided by statute; ..." The Supreme Court's finding that a competitor was not entitled to appellate review under the banking statutes and the absence of any reference to Sec. 536.100 as conferring any other right of review buttresses the conclusion that the *Rouveyrol* court found no aggrievement to a competitor as such.

*State ex rel. Rouveyrol v. Donnelly* recognizes two distinct concepts in determining standing in appeals from administrative decisions. The Constitutional right to such an appeal is based upon the fact that the decision affects the "private rights" of the person appealing. If such rights are affected the legislature cannot restrict the right of appeal although it may provide for

the method of review. *State ex rel. State Highway Commission v. Weinstein,* 322 S.W.2d 778 (Mo. banc 1959) [7, 8] [16]. The general assembly is free, however, to expand the right of appeal if it chooses to do so. *State ex rel. State Highway Commission v. Weinstein, supra.* [7, 8] [17]. If it determines that the public welfare is best served by permitting those interested in the decision to participate, albeit no "private rights" of theirs are affected for Constitutional purposes, it may do so. It may through its legislative enactments allow interested persons to become parties, or allow them appeal privileges. If it does so such persons may become "aggrieved" for purposes of that administrative procedure or tribunal. That does not mean that similarly situated persons are "aggrieved" by the action of a different administrative body under a different statute.

The matter considered in *State ex rel. Rouveyrol v. Donnelly* was subsequently addressed in *Bank of Belton v. State Banking Board, supra.* In the interim the banking statutes had been amended to provide for intervention by competitor banks (Sec. 361.095 RSMo 1978). The court, however, did not place its decision solely upon the amendment of the banking laws giving competing banks a position equivalent to a party. It also concluded that a competitor is "aggrieved" when the "judgment operates prejudicially and directly—with immediate consequence—upon a personal or property right or interest." [2]. The court then concluded that threatened competition affected such a property right or interest placing the competitor bank within the coverage of Art. V, Sec. 18 (mistakenly referred to as Sec. 22). The court then went on to state:

"The law favors free competition among banks but within a system of regulation ... That principle is best served by the grant of standing to a competitor adversely affected by new competition authorized by administrative decision." [2].

The court did not analyze the nature of the private right or interest affected by the administrative decision. As we have pointed out heretofore, there is no right to be free of competition nor a private interest in preventing competition. There is no question that regulation of banks, and of medical facilities under the CON statutes, is premised upon maintaining the business in healthy condition by reducing competition

and thereby insuring that those providing banking and medical service are strong viable entities able to serve the public more effectively and efficiently at lower cost. The purpose of restricting competition through licensing is to benefit the public generally, not to protect the rights or interests of the regulated companies. As such, competitors may be the beneficiaries of the licensing procedures but those procedures do not directly affect their "private rights." We believe this was recognized in *State ex rel. Rouveyrol v. Donnelly, supra,* in denying constitutional appeal status to competitors in banking cases. The concept of banking regulation did not change between that case and the Belton bank case and we find the conclusion of the court in the latter case that competitor banks have constitutional appeal status to be contrary to the *Rouveyrol* decision. We have no quarrel with the *Belton Bank* conclusion that the statutory change regarding intervention evidenced a legislative intention to allow full party privileges to competing banks including appeal rights. By statutory provision competing banks became "aggrieved parties" in banking licensing cases.

Whether the system of regulation is best served by allowing competitors to participate in the administrative procedure is a legislative determination. In the case of banking, that determination has been made in the affirmative. In the case before us, it has been made in the negative. As originally proposed, House Bill No. 222, 80th General Assembly, provided for appeal only by the applicant or the HSA.[2] As perfected in the House, the bill contained amendments made in committee which provided that "any affected person[3] participating as a party in the formal review may appeal the decision to the circuit court ..." The Conference Committee Substitute for House Bill 222 which was enacted and signed by the governor deleted the quoted language and reinstated the language of the original bill, thereby restricting the right of appeal to the applicant and the area HSA. This is strong, persuasive evidence of the legislative intent to restrict the right of appeal. Supportive also of this legislative intention is the rigid time schedule imposed by the statute and the automatic approval provision signifying that final action on the application is to be concluded expeditiously. Only if the action of the Committee is such as to trigger the appellate opposition of the HSA, representing the public interest, is final determination of necessity to be delayed for an appellate review. The competitive considerations in the medical care field and the banking field are similar but not identical. The impact on the individual from the bankruptcy of a medical facility is far different than the impact from a bank failure. A major purpose in reducing or stabilizing competition in the medical facility field is to effect economies of operation resulting in lower health care cost. 42 U.S.C.A. 300k(a). A major purpose in the banking field is to insure solvency of the institutions and resultant security of the assets of customers. There are also differences in the number of potential competitors of an applicant in the two areas and the resultant complication and delay in processing. There is also a difference in the availability of an agency to represent the public interest, particularly in view of the existence of HSA's whose function is exactly that. Finally there are differences between the need for immediacy of determination to approve the license. These are all factors for legislative consideration in determining who should be given appeal status. The nature of the CON law does not mandate a finding that it inherently requires an opportunity for appeal by a competitor.

We conclude therefore that plaintiff has no constitutional right to review under Art. V, Sec. 18 and that it has not been accorded "aggrieved" status under the provisions of the CON legislation.

Plaintiff also points to the federal law and opines that it was the legislative intent to provide in the Missouri law whatever was required by the federal act. We note in passing that the Missouri law differs from the federal act in several respects. *See Greater St. Louis Health Systems Agency v. Teasdale, supra.* In addition the review criteria of the federal act

**2.** We are authorized to examine the original bills to determine the legislative intent (*State ex rel. Danforth v. European Health Spa, Inc.,* 611 S.W.2d 259 (Mo.App.1980) (On motion for rehearing)) or to examine the journals of the general assembly (*Bullington v. State,* 459 S.W.2d 334 (Mo.1970) [1] ). We have therefore obtained from the Secretary of State certified copies of the printed proposed bills constituting the legislative history of the Certificate of Need Law.

**3.** The definition of "affected person" describes those persons contained in Sec. 197.305(1) heretofore quoted and would include plaintiff.

provides as a minimum that review be provided for those "adversely affected by a final decision ..." 42 U.S.C.A. 300 n–1(b)(12)(E). "Adversely affected" is not further defined. Only when the regulations promulgated by the Secretary are reached do we find an expressed federal policy to allow appeal by competitive health providers. 42 C.F.R. 123.410(a)(14) and 123.401. Even those guidelines are not mandatory upon the states as they are subject to waiver by the Secretary or subsequent amendment. 42 U.S.C.A. 300 n–1(a). We do not feel constrained to conclude that the Missouri statute automatically encompasses whatever may be included in the present or subsequent regulations of the Secretary in the absence of a clear statement that that is the legislative intent. We not only do not find such a statement but the legislative history, heretofore chronicled, establishes the specific rejection of the review suggested in the regulations.

Plaintiff had no standing to appeal the finding of the Committee and the trial court lacked jurisdiction over plaintiff's petition.

Judgment reversed and plaintiff's petition is ordered dismissed.

GAERTNER, P.J., and STEPHAN, J., concur.

### ON MOTION FOR REHEARING

PER CURIAM.

█ Plaintiff in its motion for rehearing has called to the court's attention the fact that regional health service agencies (HSA's) were abolished by executive order of the Missouri governor in 1982. Their functions were assumed by the State Health Planning and Development Agency (SHPDA). Plaintiff contends this fact, not previously addressed in the briefs, was overlooked by the court in arriving at its decision and that the reliance of the Court upon HSA's to protect the public interest is misplaced.

Our references to HSA's as protectors of the public interest were made in connection with our analysis of the legislative scheme found in the certificate of need law. We concluded that the general assembly elected to provide appeal status from the granting of a certificate of need only to the regional HSA, and elected to deny such status to other persons. Subsequent abolition of the HSA's by executive order in no way changes the legislative enactment which does not grant to plaintiff a right of appeal. Our decision was not premised upon a determination that if HSA's could not appeal plaintiff could. The appeal rights of HSA's were simply a rationale for a legislative determination that no need existed for appeal by persons such as plaintiff. The general public interest is represented by the Committee itself and SHPDA. *State ex rel. Rouveyrol v. Donnelly*, 285 S.W.2d 669 (Mo. banc 1956). There is no requirement of law of which we are aware that requires appellate review of the Committee grant of a certificate of need except when "private rights" are affected. We have already held that no "private rights" of plaintiff are affected. The absence of HSA's does not warrant or mandate a judicial substitution of competitors for HSA's as a source of appellate review. If such review is advisable the legislature is free to so provide. To date it has not done so.

Motions for rehearing and for transfer to the Supreme Court denied.