Jimmy WRINKLE, et al., Appellants,

v.

**INTERNATIONAL UNION OF OPERAT-ING ENGINEERS, LOCAL 2, AFL–CIO, et al., Respondents.**

No. 18669.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 16, 1993.

Motion for Rehearing or Transfer
Denied Dec. 8, 1993.

Application to Transfer Denied
Jan. 25, 1994.

G.H. Terando, Wilhoit, Edmundson, Terando & Hopkins, Poplar Bluff, for appellants.

Barbara C. Gumbel, Souders & Levine, St. Louis, for respondent Intern. Union of Operating Engineers, Local 2, AFL–CIO.

CROW, Judge.

This case presents an issue of first impression under the Public Sector Labor Law.[1] The 19 appellants are employees of a public body, § 105.500(3),[2] and are members of a bargaining unit represented by a union. The bargaining unit comprises approximately 60 employees, hence the appellants are a minority in the unit. The issue, heretofore undecided in Missouri, is whether the appellants have the right to judicial review of a decision of the State Board of Mediation ("the Board") dismissing their request to be placed in a bargaining unit consisting of only themselves, when neither the public body nor the union seek judicial review. The pertinent facts are undisputed.

The public body is the City of Poplar Bluff ("the City"). The union is the International Union of Operating Engineers, Local 2, AFL–CIO ("the Union").

The City operates electric, water, and sewer utilities. Organizationally, the operation is divided into three divisions: (1) Electric Distribution, (2) Water Distribution/Sewer Collection, and (3) Plant Maintenance and Office.

In 1968, the City recognized the Union as bargaining representative of the utility employees. From then until 1978, all utility employees were in a single bargaining unit, represented by the Union, and covered by a single labor agreement. In 1978, the City and the Union agreed there would be two bargaining units; each would be covered by its own labor agreement with the City.

The 19 appellants are employed in the Electric Distribution division. They consist of 13 linemen, 3 tree trimmers, 2 stock clerks, and 1 serviceman. The appellants are in a bargaining unit with some, but not all, employees in the Plant Maintenance and Office division. The latter employees consist of workers in the electricity generating plant, maintenance personnel, bookkeepers and cashiers. When the instant dispute arose, this bargaining unit was covered by a labor agreement referred to as the "electric" contract, which took effect January 1, 1990, and ended December 31, 1992. Attached to it was "Addendum No. 2," which read:

> With regard to the City's proposal to separate the bargaining units into three groups (electric distribution personnel, water distribution personnel and plant and office personnel), it is agreed between the parties to abide by the State Board of Mediation's ruling on this issue.

Pursuant to that provision, the City, on May 14, 1990, filed with the Board a "Petition for Clarification or Amendment of Bargaining Unit." Essentially, the petition re-

---

1. The appellation "Public Sector Labor Law" refers to §§ 105.500–.530, RSMo 1986. *Curators of the University of Missouri v. Public Service Employees Local No. 45*, 520 S.W.2d 54, 55 (Mo. banc 1975). References to statutes in this opinion are to RSMo 1986.

2. Section 105.500(3) reads:
   "**Public body**" means the state of Missouri, or any officer, agency, department, bureau, division, board or commission of the state, or any other political subdivision of or within the state.

cited the facts already set forth in this opinion and stated: "The City is requesting a clarification or amendment of the bargaining unit so that there may be separate negotiations with each division of the City's Utility Department."

The petition pled there should be a separate bargaining unit for each of the three divisions because (a) the manager of the Plant Maintenance and Office division was currently required to operate under two contracts inasmuch as some employees in that division were covered by the "electric" contract and other employees in that division were covered by the other contract, (b) the proposed clarification or amendment would aid the City in "job bidding" by placing all employees who work in similar environments under a contract allowing more qualified people to bid on future jobs under such contract, (c) the proposed clarification or amendment would enhance employee safety, as it would allow better qualified people to be assigned positions for which they are eligible, and (d) the growth and development of the individual divisions had led to diversity and lack of common interest, which would be remedied by creating a bargaining unit for each division.

Soon after the City filed its petition, the appellants filed with the Board a "Petition for Intervention." In this opinion, we henceforth refer to the appellants as "Intervenors," the status they occupied in the Board proceeding.

Intervenors' petition alleged, inter alia, that they lacked a community of interest with the other employees in the "electric" bargaining unit, that the latter employees, being a majority of the unit, had unwarranted and disproportionate power in negotiating safety issues affecting Intervenors, that the majority was able to "leverage" its own interests against those of the higher-paid Intervenors, and that Intervenors' interests cannot be protected in a bargaining unit dominated by a majority that does not share those interests.

Intervenors' petition made it clear they did not wish to withdraw from the Union, but only to be in a bargaining unit which is better able to negotiate issues "in which non-Electric Distribution employees have little or no interest."

The Board granted Intervenors leave to intervene, inferably per 8 CSR 40–2.130.[3]

Following a somewhat rambunctious evidentiary hearing (the transcript of which comprises 182 pages), the Board issued a 14–page decision. Its final paragraph reads:

It is the decision of the … Board … that the existing two voluntarily recognized units in the City's Utility Department are appropriate bargaining units. Inasmuch as these two units have existed essentially unchanged since 1978, we have declined to either replace them with three units corresponding with divisional lines (as proposed by the City) or to carve out the Electric Distribution Division from the existing electric unit (as proposed by the Intervenors). Accordingly, both petitions are hereby dismissed.

Intervenors thereupon filed a "Petition for Review" in the Circuit Court of Butler County, alleging they were aggrieved by the Board's decision. The petition named the Union and the Board as defendants.

Judicial review in this type proceeding is addressed by § 105.525 which reads, in pertinent part:

Issues with respect to appropriateness of bargaining units and majority representative status shall be resolved by the state board of mediation. In the event that the

---

**3.** 8 CSR 40–2.130 is one of the "General Rules" promulgated by the Board; it reads:

Any third party having a legitimate interest in any proceedings may file a petition of intervention setting forth facts sufficient to establish such interest and requesting that the board resolve contested factual matters in its favor. For purposes of third-party intervention, legitimate interest means the intervenor must be able to prove it is authorized to represent at least ten percent (10%) of the employees within a proposed bargaining unit. An intervening organization's showing of legitimate interest shall be made either prior to or during the course of any hearing that may be held. Any organization which has a signed, valid collective bargaining agreement encompassing the proposed bargaining unit, or any portion, shall be considered to have a legitimate interest in any proceedings upon presentation of same.

appropriate administrative body or any of the bargaining units shall be aggrieved by the decision of the state board of mediation, an appeal may be had to the circuit court of the county where the administrative body is located....

Intervenors thereafter moved the trial court for an order joining the City as a party. The trial court granted the motion, and the City filed an answer admitting the allegations of Intervenors' petition.

On January 29, 1993, the trial court entered judgment affirming the Board's decision. Intervenors, alone, bring this appeal from that judgment.

The Union—the only party filing a brief in response to Intervenors' brief—maintains Intervenors' appeal should be dismissed in that this Court "lacks jurisdiction" over the appeal. The Union directs us to 8 CSR 40–2.050, one of the "General Rules" promulgated by the Board.[4] It reads, in pertinent part:

> PURPOSE: *This rule describes who may file a petition for clarification of bargaining unit or amendment of certification....*
>
> (1) The majority representative or the public employer may file a petition for clarification of a bargaining unit or amendment of any certification issued by the chairman or the board.
>
> ....

The Union emphasizes Intervenors are neither the majority representative nor the public employer. Consequently, reasons the Union, when the Board dismissed the City's petition and Intervenors' petition, Intervenors "no longer had an independent legal basis on which to proceed."

Additionally, the Union reminds us that after the Board's decision, neither the City nor the Union appealed to the trial court. Only Intervenors did. The City became a party in the trial court only because that court granted Intervenors' motion to join the City as a party.

The Union's logic, as we understand it, is that because (a) 8 CSR 40–2.050 confers no right on Intervenors to file a petition for clarification of a bargaining unit or amendment of certification with the Board, and (b) § 105.525 confers no right of appeal from the Board's decision on anyone except public bodies and bargaining units, Intervenors had no right to appeal to the trial court (and, *a fortiori*, no right to appeal from there to this Court).

■ We begin our analysis by noting that the right of appeal is statutory; without underlying statutory authority there is no right to an appeal. *United Labor Committee, Inc. v. Ashcroft,* 572 S.W.2d 446, 447[1] (Mo. banc 1978). In that case the issue confronting the Supreme Court of Missouri was whether the losing party could appeal from the trial court to the Supreme Court in a proceeding under § 125.030.8, RSMO Supp.1977, seeking a different official ballot title for a proposed constitutional amendment. Finding no statute allowing the appeal, the Supreme Court dismissed it. 572 S.W.2d at 448.

In the instant case, the first "appeal" was not from the trial court to us, but instead from the Board to the trial court. Section 105.525 (quoted in pertinent part *supra*) authorizes the Board to resolve issues about appropriateness of bargaining units and majority representative status, and provides that if a public body or any bargaining unit is aggrieved by the Board's decision, an "appeal" may be taken to the circuit court. We find no other mention of "appeal" in the Public Sector Labor Law.

The obvious question is whether Intervenors are a "bargaining unit" within the meaning of § 105.525. The Public Sector Labor Law supplies little help on that issue. In § 105.500, we find these definitions:

> (1) **"Appropriate unit"** means a unit of employees at any plant or installation or in a craft or in a function of a public body which establishes a clear and identifiable community of interest among the employees concerned;

---

**4.** *Section* 295.070.1 reads: "... The board shall by regulation prescribe the methods of procedure before it." The Board cites § 295.070 as author-ity for 8 CSR 40–2.050. The Board cites the same statute as authority for 8 CSR 40–2.130 (quoted *supra,* footnote 3).

(2) **"Exclusive bargaining representative"** means an organization which has been designated or selected by majority of employees in an appropriate unit as the representative of such employees in such unit for purposes of collective bargaining;

■ Although Intervenors could arguably be an "appropriate unit" as statutorily defined above, we are unconvinced they are a "bargaining unit" as contemplated by § 105.525, the only statute in the Public Sector Labor Law mentioning "appeal." Instead, Intervenors are some, but not all, of the members of an existing bargaining unit represented by the Union.

The Union, which maintains Intervenors have no right to appeal, cites no case supporting that contention. Intervenors' brief does not mention the issue, and they filed no reply brief. Our independent research came up empty.

The Union argues that allowing Intervenors to obtain judicial review of the Board's decision would circumvent 8 CSR 40–2.050, which allows only the "majority representative" or the "public employer" to file a petition for clarification of a bargaining unit or amendment of certification. According to the Union, allowing Intervenors to appeal would "give any employee group the right to dictate the direction of labor policy for the public employer" when neither the public employer nor the employees' bargaining representative appeals the Board's decision.

On the other hand, an argument can be made that inasmuch as the Board allowed Intervenors to intervene in this proceeding (which Intervenors apparently could not have initiated on their own), Intervenors should have the right to judicial review.

While there is logic in such an argument, an argument can be made that the Board, in allowing Intervenors to intervene, was motivated by the praiseworthy desire to hear all viewpoints on the issue raised by the City's petition, but once everyone had been heard, only the City and the Union had the right to judicial review of the Board's decision.

The arguments in the two preceding paragraphs are appropriate for debate on the public policy of who should have the right to appeal, but provide no guidance on whether § 105.525, which we must apply, grants Intervenors the right to appeal.

Mindful we are exploring unmapped territory, we hold Intervenors are neither a public body nor a bargaining unit within the meaning of § 105.525; consequently, the right to "appeal" created by that statute does not extend to Intervenors.

From *In re Roadway in Section 21, Township 60, Range 6, West*, 357 S.W.2d 919, 921[2] (Mo.1962), we learn:

Since the legislature has power to formulate conditions under which resort to the courts may be had, the persons accorded a right to obtain a review of administrative decisions and orders are to be ascertained from the terms of the statute providing therefor.

Here, § 105.525 empowers the Board to resolve issues about appropriateness of bargaining units and majority representative status. To us, the statute contemplates such issues will be raised by either public bodies or by authorized representatives of bargaining units, not by a splinter group in an existing bargaining unit represented by a union.

The Board evidently understands the statute that way. As we have seen, 8 CSR 40–2.050 allows the majority representative or the public employer to file a petition with the Board for clarification of a bargaining unit or amendment of certification. Nothing in the rule indicates the Board intended to allow individual employees in a bargaining unit represented by a union to file such a petition.

Intervenors apparently construe § 105.525 and 8 CSR 40–2.050 that way. Intervenors did not attempt to file their petition with the Board under either the statute or the rule as a matter of right. Instead, Intervenors sought, and received, leave to intervene.

■ Not every person who files a protest and is given an opportunity to be heard by an administrative agency has a right to appeal from an order of the agency, but whether a particular person has the right to contest administrative action is largely a question of law, dependent on a number of variable factors, including the nature and extent of his interest, the character of the administrative

act, and the terms of the statute. *State ex rel. Rouveyrol v. Donnelly*, 365 Mo. 686, 285 S.W.2d 669, 676[16] (banc 1956).

Finding nothing in § 105.525—or anyplace else in the Public Sector Labor Law—purporting to grant Intervenors the right to "appeal" the Board's decision, we must determine whether Intervenors are granted that right elsewhere.

Article V, § 18 of the Constitution of Missouri (amended 1976) reads:

All final decisions ... on [sic] any administrative ... body existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as provided by law....

As explained in *St. Joseph's Hill Infirmary, Inc. v. Mandl*, 682 S.W.2d 821, 824 (Mo. App.E.D.1984), *appeal dismissed*, 474 U.S. 801, 106 S.Ct. 32, 88 L.Ed.2d 26 (1985), the above constitutional provision has been implemented by § 536.100, RSMo 1986, which reads:

Any person who has exhausted all administrative remedies provided by law and who is aggrieved by a final decision in a contested case ... shall be entitled to judicial review thereof, as provided in sections 536.100 to 536.140, unless some other provision for judicial review is provided by statute....

■ A party is aggrieved when the decision operates prejudicially and directly upon his personal or property rights or interests. *The Hertz Corp. v. State Tax Commission*, 528 S.W.2d 952, 954[2] (Mo. banc 1975). The right or interest involved must be one the law protects. *St. Joseph's Hill Infirmary*, 682 S.W.2d at 824; *State ex rel. Schneider v. Stewart*, 575 S.W.2d 904, 910 (Mo.App.1978).

It follows that Mo. Const. art. V, § 18 and § 536.100 entitle Intervenors to judicial review of the Board's decision only if that decision operates prejudicially and directly on a right or interest of Intervenors which the law protects.

Intervenors do not contend they have a legally protected right to be in a bargaining unit consisting of only themselves and no other fellow employees. That is, Intervenors claim no legal right to declare themselves, alone, a bargaining unit (represented by the Union) which the City must recognize. If Intervenors had that right, it would have been unnecessary for them to ask the Board to remove them from the bargaining unit to which they are presently assigned and recognize them as a separate, 19-member bargaining unit. That Intervenors have no right to declare themselves a separate bargaining unit is clear from *Parkway School Dist. v. Local 902/MNEA*, 807 S.W.2d 63, 68 (Mo. banc 1991), which holds that determination of what constitutes an appropriate bargaining unit is primarily for the Board, and its determinations are given great deference by Missouri courts.

■ Because Intervenors had no legally protected right to divorce themselves from their existing bargaining unit and anoint themselves a separate bargaining unit, represented by the Union, we hold Mo. Const. art. V, § 18 and § 536.100 do not grant Intervenors the right to judicial review of the Board's decision. That being so, Intervenors had no right to file their "Petition for Review" in the trial court. That court should have dismissed Intervenors' petition.

We are not oblivious of Intervenors' frustration at being in a bargaining unit which, as they perceive it, is indifferent to their interests. We likewise do not ignore the irony that the Union, Intervenors' exclusive bargaining representative, is the only party insisting Intervenors have no right to judicial review. Whether it would be wise public policy to grant dissident, union-represented, public employees the right, individually, to judicial review in instances such as this is for the General Assembly, not us, to determine. Applying the law as we find it, we are constrained to hold it does not vest Intervenors with the right to judicial review of the Board's decision.

The judgment of the trial court is vacated, and this case is remanded to the trial court with directions to dismiss Intervenors' petition.

FLANIGAN, P.J., and PREWITT, J., concur.