Burl W. ATKINS and Pansy Atkins, Plaintiffs-Appellants,

v.

DEPARTMENT OF BUILDING REGULATIONS, CITY OF SPRINGFIELD, Defendant-Respondent.

No. 61346.

Supreme Court of Missouri, Division I.

April 8, 1980.

Gary T. Nelms, Springfield, for plaintiffs-appellants.

Howard C. Wright, Jr., City Atty., and Lyndel H. Porterfield, Asst. City Atty., Springfield, for defendant-respondent.

ROBERT R. WELBORN, Commissioner.

Proceeding, for review by injunction of decision of administrative agency. Department of Building Regulations of City of Springfield issued an order to Burl W. Atkins and Pansy Atkins to repair a dwelling house owned by them so that it would not constitute a public nuisance under city ordinance. When repairs were not undertaken to satisfaction of the Director of the Department, property owners were notified that Department intended to demolish the structure. Owners filed this action to enjoin Department from following that remedy. Trial court issued temporary injunction, but upon Department's motion to dismiss, treated as motion for summary judgment, court found against plaintiffs and dissolved temporary injunction and dismissed petition. Plaintiffs appeal. This Court issue stay pending appeal.

Pursuant to the authority granted by Sections 67.400—67.450, RSMo 1978, the City of Springfield in 1969 enacted a "Dangerous Buildings Code." §§ 8–100—8–113, Springfield City Code. Section 8–101 enumerates twelve conditions which would constitute a building a public nuisance. Section 8–102 provides for inspectors of dangerous buildings to inspect buildings believed to be in a condition prescribed by Section 8–101. In case a building had any of those conditions, the inspector is to determine "whether or not it reasonably appears there is immediate danger to the health, safety or welfare of any person because of such condition, * * *." If the inspector so finds, he notifies the director of public works of his finding and if the director concurs, a notice is posted on the structure to the effect that it has been found to be a public nuisance.

Section 8–103 requires the inspector to notify the owner of the determination that the property has been declared a public nuisance, the conditions which under Section 8–101 call for such determination, and the action required for abatement of the nuisance, including "ordering the building or structure to be vacated if such be the case, reconditioned, or removed, giving a reasonable time for commencement of the work, and requiring the work to proceed without unnecessary delay."

Section 8–105 provides that standards for determining the action required to alleviate a public nuisance as follows:

"(b) If the conditions are such as to make the building or structure immediately dangerous to the health, safety or welfare of its occupants, the building or structure shall be ordered vacated pending abatement of the nuisance.

"(c) In all cases where the conditions causing the building or structure to be a public nuisance cannot be reasonably repaired or maintained so that the building or structure will no longer exist in violation of the terms of this article, the building or structure shall be demolished.

"(d) In any case where the conditions constituting the public nuisance are such that the costs to repair or maintain the building or structure so that it will no longer constitute a public nuisance equal or exceeding fifty per cent (50%) of the value of the building or structure, it shall be ordered repaired or demolished, and in the event it is not repaired or demolished by the owner, then the city shall abate the nuisance by demolition.

"(e) Any building or structure constituting a public nuisance because of the conditions described in subsection (f) of section 8–101 of this article shall be ordered to be completed in accordance with lawful plans and specifications, and if it shall not be so completed or demolished by the owner, then the city shall abate the nuisance by demolition.

"(f) Any building or structure found to be a public nuisance because of the conditions described in subparagraph (g) of section 8–101 of this article shall be ordered demolished. (G.O. No. 1924, December 15, 1969, effective January 4, 1970.)"

Section 8–106 provides that, upon failure to comply with the notice to abate the nuisance, the director of public works, upon notice to the parties, shall have a full hearing on the following issues:

"(1) Whether or not the building or structure involved is a public nuisance under the terms of this article;

"(2) Whether the procedures required by this article shall have been substantially followed; and

"(3) Whether or not the abatement order of the dangerous building inspector was reasonable and within the standards of this article."

Section 8–107 requires the director, within 30 days from the hearing, to make a conclusion of law as to whether the building is a public nuisance and detrimental to the health, safety or welfare of residents of the city. He is required to find as a matter of fact the conditions which constitute the nuisance. "If it is found that the building or structure is a public nuisance, further findings shall be made as to whether or not the procedures required by this article have been substantially met and complied with, and whether or not the abatement order of the inspector of dangerous buildings to abate the nuisance was reasonable in its terms and conditions and within the standards of this article."

Section 8–108 provides that, upon making such findings, the director shall issue an order directing that the building be completed, repaired or demolished, as the case may be, "within the standards of this article." The order is to be "delivered or mailed" to each party to the proceeding. It must specify a reasonable time, not less than 30 days from the date of its issuance, for compliance with the order and provide that in the event of noncompliance, the director will cause the work to be done by either city employees or by contractors employed for the purpose.

Sections 8–109 and 8–110 relate to issuance of special tax bills to pay for work done by the city or its contractors.

Section 8–111 gives the owner and others interested in the property the right of appeal from the order of the director to the Circuit Court of Greene County "as established in Article 536 of the Revised Statutes of Missouri."

Burl W. and Pansy Atkins, husband and wife, owned an unoccupied residence at 639 South New in Springfield. The Atkinses bought the house in 1933 and occupied it as their residence for several years. They had moved out of the house at some unstated time and it had since remained vacant.

At sometime not shown by the transcript in this Court, an inspector of dangerous buildings inspected the Atkins property and concluded that it was a dangerous building and a public nuisance under the Dangerous Buildings Code. Notice of that determination was served on the Atkinses, but they failed to take the steps required to correct the condition. On November 19, 1976, Department Director notified Atkins that a hearing would be held on December 14, 1976, in accordance with Section 8–106.

A hearing was held at which the Atkinses were present and represented by counsel. Following the hearing, the Director, on December 15, 1976, issued his findings and order. He found the building in violation of Section 8–101 as follows:

"(b) Damage and deterioration to floors and walls and ceiling; (c) insufficient strength of roofs and floors to be reasonably safe for purpose for which intended; (d) Those which have been substantially damaged by fire, wind or other causes; (e) Those which are uninhabited and open at door and window; (h) Those containing therein substantial accumulations of trash, garbage, or other materials susceptible to fire or constituting or providing a harboring place for vermin or other obnoxious animals or insects; (k) Those containing therein substantial accumulations of trash, garbage, or other materials susceptible to fire or constituting or providing a harboring place for vermin or other obnoxious animals or insects." (sic)

His conclusions of law included the finding that the building was a public nuisance and

detrimental to the health, safety and welfare of the citizens; that the procedures required by the Dangerous Buildings Code had been substantially met and complied with and that the abatement order of the inspector was reasonable and within the standards of the Code.

The Director ordered the owner to abate the nuisance and to commence repairing the building or demolish it, the repair or demolition to commence within 30 days of the date of the order. The order further provided that, if the owner failed to commence repairs or demolition within such period, the city would demolish the building. The order was made effective December 20, 1976, and the owners were notified that appeal must be filed within 30 days of the effective date of the order.

Copies of the order were mailed by certified mail to each of the Atkins on December 15, 1976. On January 4, 1977, the post office returned those letters, marked "unclaimed." On January 31, 1977, a copy of the order was mailed to the attorney for the Atkinses and delivered February 1, 1977.

On May 24, 1977, the Director wrote Atkins, stating that a "visual inspection" showed that the order of December 15, 1976 had not been complied with. The letter stated that bids would be solicited by the city for demolition of the building on or after June 8, 1977.

On June 22, 1977, the Atkinses filed their petition in the Greene County Circuit Court to enjoin action by the Department. It sought review of the May 24 order under Section 536.150, RSMo, as in a noncontested case. It alleged that the determination that plaintiffs had not complied with the order of December 15, 1976, and the proposed demolition of the building were unconstitutional, arbitrary and an abuse of administrative discretion for the following reasons:

A. Plaintiffs were deprived of the right to appeal the order of December 15 because they were not served with the order until February, 1977, more than 30 days from its effective date.

B. Plaintiffs made a good faith effort to make repairs but were prevented from doing so because defendant denied them a building permit.

C. Plaintiffs have made a good faith effort to repair their property.

D. Any delays in making repairs had been caused by weather and to causes beyond plaintiffs' control.

E. The building presents no danger to the general public.

F. Plaintiffs are financially unable to contract out all of the work required and must do part of it themselves. Demolition would deny them equal protection of the law because it would penalize them for their economic status.

G. The determination to demolish the building is ultra vires because there has been no finding as required by Section 8–105(d) that the cost to repair would exceed 50% of the value of the structure.

H. The legal description of the property is erroneous.

Plaintiffs sought a hearing on the determination that they had not complied with the December 15, 1976 order and for injunctive relief.

A temporary injunction issued.

On July 18, 1977, the defendant moved to dismiss on the grounds of lack of jurisdiction over the subject matter by reason of the failure of plaintiffs to exhaust the remedies provided by appeal from the December 15 order; that such order barred plaintiffs' claim; that plaintiffs stated no cause of action; that they had improperly joined an action for review of a contested case (December 15 order) and a noncontested case (May 24 order).

Suggestions in support of and in opposition to the motion to dismiss were filed. On September 8, 1977, the trial court advised the parties that, in response to defendant's suggestions, the court would apply Rule 55.27(a) and treat the motion as one for summary judgment under Rule 74.04. The parties were given time to file affidavits under that rule.

In its memorandum, the trial court also stated:

"We probably should mention in passing that plaintiffs suggest to the court that there was no determination in the December 20, 1976, order disclosing that the cost of repairs to the structure exceeded fifty per cent of the value of the building in order that demolition might take place. The court is of the opinion that this issue should have been raised by an appeal from the order of December 20, 1976."

Plaintiffs filed an affidavit of Mr. Atkins, in which he stated that since the December, 1976 hearing he had made substantial repairs to the property involved, including repainting the entire house, replacement of the roof, including new decking and shingles, replacement of broken windows, removal of deteriorated back porch, and removal of debris. The affidavit also stated that Floyd Finney had, at the time of the hearing, been employed to work on the property but bad weather and illness prevented his doing as much work as had been anticipated. It stated that materials had been purchased for repair of the front porch and that Atkins would work on the property as his health and full-time employment elsewhere would permit.

Defendant filed an affidavit of Jack Rice, a Dangerous Buildings Inspector for the City of Springfield. He stated that he had inspected the house on January 31, March 7 and March 28, 1977, and observed no change in the conditions existing prior to the hearing. Rice had inspected the house prior to the hearing and testified to the conditions he found. He subsequently inspected the house on seven occasions between April 26 and August 22, 1977, and found only partial repair of a porch roof and painting of portions of the house. Attached to the affidavit were pictures of the house taken September 9, 1977, which Rice alleged showed that the order to repair had not been complied with. According to Rice, the photographs showed that a portion of the roof was rotted and deteriorated; the front porch needed to be completely resheathed and roofed; front porch supports spalling away and front porch floor completely rotted through; front porch ceiling rotted through; support column for front porch rotted through and missing; rear porch detached from house and missing.

On September 30, 1977, the court took note of the affidavit of Rice and advised counsel for the parties that it was clear that plaintiffs had not complied with the requirements of the Department of Building Regulations, and that " * * * the City has been justified in its stand on the matter." The court also noted the affidavit of Atkins concerning the work which had been done. He requested Rice to view the property and advise the court whether the building should be demolished or whether it should be repaired, and, if it should be repaired, what repairs should be made.

On December 13, 1977, the trial court noted the receipt of a report of Rice. This report, dated December 8, 1977, listed 13 actions necessary to "abate this nuisance of a dangerous building compliance with the BOCA Basic Building Code/1970 * * * Basic Plumbing Code/1970 and the National Electric Code * * *." Included were such items as: "7. Install bathroom fixtures: minimum one water closet, one lavatory, one bathtub or shower stall. Install one kitchen counter sink. Install a clothes washer hook-up facility. Install a water heater * * *." "9. Structure to be rewired for electrical service and distribution as per Electrical Code and Ordinances * * *."

The trial court ordered " * * * plaintiffs to comply with necessary work and repairs as set forth in letter to plaintiffs' attorney." He gave plaintiffs until January 13, 1978, to provide the court with satisfactory evidence that the requirements of the city were being met.

On February 14, 1978, an affidavit of Rice was filed, stating that none of the items in the December 8, 1977, letter had been complied with. According to Rice, he had talked to John Cox, purportedly Atkins' contractor to work on the property, and Cox told him that he had done nothing because

of Atkins' lack of cooperation and that Cox had no intention of starting or completing the work.

On March 1, 1978, an affidavit of Cox was filed, stating that Atkins had, on January 9, 1978, contracted with him to do the work necessary to bring the property into compliance with the Building and Electrical Codes, but that weather had prevented his working and that he understood that Atkins was to do some preliminary clean-up work on the property which had not been done. Cox stated that he was prepared to complete his work within 60 days upon receipt of progress payments from the owner. Cox denied that he told him that he had no intention of starting or completing the job.

On March 1, 1978, plaintiffs moved to amend their petition to allege that the Dangerous Buildings Code and Sections 67.400–67.450, RSMo 1969, were unconstitutional because they authorize the taking of private property for public use without just compensation, in violation of Mo.Const. art. I, § 10, and the Fourteenth Amendment to the United States Constitution. In their memorandum in support of the motion to amend, plaintiffs stated: "Plaintiffs do not request oral argument with respect to the constitutional issues asserted in the amendment to their Petition."

On March 15, 1978, the affidavit of Mr. Atkins was filed. It stated that, on March 6, 1978, he paid Cox $1,500 and that Cox began work on the property.

On that date, the court deferred action on the City's motion for 60 days.

On September 21, 1978, the defendant moved to reopen the hearing on the motion to dismiss and to allow the City to proceed with demolition " * * * since the plaintiffs have failed to proceed adequately and continuously with repairs as directed by the Court." In support of the motion, an affidavit of Rice was filed. It stated that, between March 28, 1977, and August 22, 1977, the only repairs made were a partial repair of a porch and the painting of portions of the house; that, since August 22, 1977, the only changes in the condition of the house he observed were a new floor on the front porch, a new back porch and some minor painting; that apparently no work had been performed since June 16, 1978.

On October 11, 1978, Mr. Atkins' affidavit was filed. It stated that he had, since March, 1978, paid Cox $3,292 for repairs on the property and repairs of the front and rear porches had been completed; that further work required clearing the interior which Atkins planned to do himself but was unable to do because of his health. The affidavit stated that if permitted to do so, Atkins would clear the interior within a reasonable time so that the work might proceed.

On the same date, the court granted plaintiffs 30 days to make "substantial improvements on premises, or Court will grant City leave to proceed."

On January 10, 1979, an affidavit of Rice was filed. It stated that, after several unsuccessful efforts to contact Atkins, he finally did so on December 14, 1978, and Atkins refused to permit him to inspect the property. The affidavit stated that observation of the exterior and examination through the windows showed no change in the condition of the house since the October 11, 1978 hearing.

The defendant also filed an affidavit of Dangerous Buildings Technician Hutchinson that Atkins, on December 14, 1978, refused permission to inspect the property.

Defendants moved to reopen the hearing on their motion to dismiss and to permit demolition of the property, stating that plaintiffs had failed to proceed adequately and continuously with repair of the property and refused to permit inspection.

On February 5, 1979, plaintiffs filed another affidavit of Atkins, denying that he had refused to permit Hutchinson to inspect the property, stating that he asked Hutchinson to come back after Christmas and Hutchinson made no objection to the request. Atkins stated that, since the October 11, 1978, hearing, he had put concrete caps on the banisters of the front porch, removed wallpaper from inside the premises and cleaned up the yard, but he had been

unable to continue inside work because of severe cold. He stated that expenses in excess of $5,000 had been incurred "since 1977–1978." He stated that if additional time "until good weather" was granted, he would have further repairs made on the property in the spring.

On February 8, 1979, a hearing was held by the court on the city's motion to reopen the proceedings on its motion to dismiss. Hutchinson testified for defendant. He stated that, in December, he asked Atkins for permission to inspect the house and Atkins told him he couldn't get in until after Christmas because he hadn't completed the work ordered by the defendant. He had made no subsequent effort to get in touch with Atkins. He did observe the exterior the day before the hearing. He offered photographs taken at that time which showed, he said, that the two pillars were missing from the front porch and the porch roof was beginning to sag. A small part of the roof had not been completed. One picture did show that the back porch had been replaced. He acknowledged on cross-examination that there had been some work on the front porch and a new roof put on the house and it had been painted. When asked whether there was any indication that the property was structurally unsound he responded in the negative. He also expressed the opinion that the house represented no hazard or danger to the public at large.

Rice testified that he had inspected the house, looking through windows from the outside, on January 4 and the day before the trial. He described the floor in the kitchen area as " * * * still approximately waist deep with cat manure, cat cans, rubble and debris of all types, with the damndest stink that you could possibly smell, even at this day and time as cold as it is." He said that brick supports for the pillars to hold up the front porch had been reconstructed, but the pillars had not been put in place and the beam supporting the roof was sagging.

Atkins testified for plaintiffs. He said that, since December, 1976, he had practi-

cally rebuilt the roof of the front porch and put flooring on it. The back porch was replaced and the house painted. He had been working at removing wallpaper. He had paid Cox some $3,200 for this work. By way of offers of proof, the defendant objecting that the issue before the court was what had been done since October, 1978, Atkins stated that he had spent $4,600 on the house since December, 1976.

He stated that the odor from the kitchen was not offensive to him and that all that would be required to correct that situation would be to get a couple of cardboard boxes and pick up the matter on the floor.

He stated that he worked as an accountant and that he couldn't get all of the things ordered by the court done because he was working at his employment and partly because of his health and the weather.

At the conclusion of the hearing, the court announced that he would set aside the restraining order. Noting that he had raised constitutional questions, counsel for plaintiffs requested the court to delay such action in order to permit him to seek relief by extraordinary writ in an appellate court. The court agreed to delay. Apparently there were unsuccessful attempts to obtain extraordinary relief. On March 30, 1979, the court entered judgment, sustaining the city's motion to dismiss, treated as a motion for summary judgment, and dismissed plaintiffs' petition with prejudice. This appeal followed.

In this Court, appellants' first point asserts the unconstitutionality of Section 67.-400 and the Dangerous Buildings Code on the grounds that they unreasonably permit confiscation of private property for public use without just compensation in violation of state and federal constitutional protections.

■ Whether this question is properly preserved for review in this Court is at best questionable. One of the prerequisites for preservation of a constitutional question for review in this Court is that the question has been presented to and passed upon by the lower court. Missouri Appellate Jurisdic-

tion, W.U.L.Q., Vol. 1964, p. 424, 1.022, p. 461 (December, 1964). In this case, in amending their petition to assert their constitutional claim, appellants disclaimed oral argument on the question. When the trial court announced its intention to find against appellants, they did not press their constitutional objections upon the trial court. Instead, they requested and were granted an opportunity, ostensibly to advance those claims by way of extraordinary relief in higher court.

The trial court, in refusing the relief requested by appellants, did not necessarily reject their constitutional claims. The trial court may well have considered that such claims were not properly before it because they had not been raised at the first opportunity, in a proceeding for direct review of the order of December 15, 1976.

■ Even if the claim is considered properly before this Court, appellants' brief on the issue presents only a recitation of generalities, not directed at the provisions of the statute and ordinances questioned.

As best as it can be understood, appellants' basic claim of unconstitutionality is premised upon the contention that the statute and ordinances subject a property owner to loss, without compensation, of his property which had been determined to be a nuisance, "regardless of whether the evil to be suppressed is inherent in the condition of the property or is simply part of the use to which the property is being put." Appellants point to no provision of the statute which authorizes this result. The ordinance does provide in Section 8–101(h) for declaration of a nuisance based upon what might constitute use of the property. Appellants make no effort to demonstrate that, under the ordinance, a finding of nuisance based upon the conditions described in Section 8–101(h) is a proper basis for an order of demolition. They make no effort to relate this contention to the case here presented where the finding of a nuisance was based upon a combination of structural deficiencies and the use to which the property was put.

■ A party who asserts the unconstitutionality of a statute or ordinance bears the burden of supporting that contention by at least relating his argument to the statute or ordinance and issue at hand. Appellants here have not done so and the constitutional issue will not be further treated.

The conclusion regarding appellants' attempt to raise a constitutional issue would provide an adequate basis for transfer of this appeal to the Court of Appeals. However, in the interest of judicial economy, the appeal will be retained here. Rule 83.06. *Foremost-McKesson, Inc. v. Davis,* 488 S.W.2d 193, 196 (Mo. banc 1972).

■ Appellants contend that the December 15, 1976 order of the Director and the subsequent order that the property be demolished for failure to make repairs were ultra vires and invalid because the Director made no finding as required by Code Section 8–105 that repairs could not be made or that the cost of repairs equalled or exceeded 50% of the value of the building. Appellants contend that a finding by the Director as to the value of the building and the cost of repairs was "absolutely imperative in order to justify an uncompensated taking of their property." The trial court took note of their complaint and concluded that it was a matter cognizable only upon a proceeding for direct review of the Director's order.

Appellants rely upon cases from other jurisdictions which have considered the requirement of such a cost of repair finding significant in sustaining the constitutionality of a process such as the code here involves. See *Perepletchikoff v. City of Los Angeles,* 174 Cal.App.2d 697, 345 P.2d 261 (1959); *Soderfelt v. City of Drayton,* 79 N.D. 742, 59 N.W.2d 502 (1953).

Section 8–105(d) of the Springfield code contains as a standard for determining the action to be taken for alleviation of a nuisance the requirement, as a condition of demolition, that the cost of repair equal or exceed 50% of the value of the building. This is a standard which the dangerous buildings inspector who makes the original determination that the structure is a nuisance (§ 8–103) must apply in deciding the

action necessary to abate the nuisance. Upon a hearing before the Director of Public Works, that officer is required to determine "whether or not the abatement order of the dangerous building inspector was reasonable and within the standards of this article." (§ 8–106(3)).

In this case, the Director made such a finding. On this collateral attack on the order, the finding of the Director is sufficient.

■ Appellants contend that their attack on the validity of the order should not be limited as a collateral attack because they were deprived of the opportunity to seek direct review of the order by reason of the failure of the Director to give them and their counsel timely notice of his decision and of their right to appeal his determination.

The Director's order, dated December 15, 1976, had an effective date of December 20, 1976. The order included the recital that appeal to the circuit court must "be filed within thirty (30) days of the effective date of this order." Copies of the order were mailed by registered mail to the Atkinses on December 15, but the letters were returned by the post office on January 4, 1977, marked "unclaimed." There are conclusory statements in affidavits on behalf of defendant that the letters were unclaimed because appellants refused to accept delivery of them. The affidavits did not establish that fact. Ultimately, a copy of the order was received by appellants' attorney on February 1, 1977.

■ The problem in this case arises in part from the Director's assumption to advise the parties of the time for taking of an appeal. The time for appeal is fixed by law (Section 536.110, RSMo 1978, embodied in Rule 100.04) as " * * * within thirty days after the mailing or delivery of the notice of the agency's final decision." Compliance with this provision is a jurisdictional prerequisite. *Lafayette Fed. Savings and Loan Association of Greater St. Louis v. Koontz,* 516 S.W.2d 502 (Mo.App.1974).

Thus, if appellants were deprived of their right of appeal, it was not by reason of the time allotted by the Director in his notice to appellants. Section 536.110 recognizes service by mail. The ordinance authorized notice by mail. In such situation, the posting of the notice, properly addressed, constituted service. 58 Am.Jur.2d Notice, § 27, p. 507 (1971).

■ There is no occasion to speculate as to what, if any, remedy was available in order to permit a direct appeal of the Director's order in these circumstances. Even if it should be assumed that the nondelivery of the notices to the Atkinses precluded the running of the time to appeal from that mailing, no effort was made within 30 days of the receipt of the notice by the attorney to appeal the Director's order. Appellants did nothing until June 22, 1977, and at that time they did not seek relief by way of review of the December 15 order. Having made no effort to obtain review of that order, appellants will not now be heard to complain that they were denied the right of review.

■ Appellants complain that the trial court erred in excluding evidence that Atkins had spent $4,600 for repairs on the property since the December, 1976 hearing. Objection to Atkins' testimony to that effect was sustained by the trial court. However, as authorized by Rule 73.01, the evidence was preserved in the record by an offer of proof. The trial court's ruling is not reversible error in any event. Appellants' burden is to show that the evidence was properly admissible and more importantly that its consideration should produce a different result from that reached by the trial court. At best appellants' argument would demonstrate only the former and they make no effort to show that consideration of the evidence should produce a different result. Furthermore, there was evidence before the court in the form of testimony and affidavits which disclosed the work which appellants had done on the property. The transcript contains evidence of payments totalling some $3,900.00. Atkins' affidavit of September 24, 1977 refers

**436**

to an exhibit showing payment to Finney for work on the house. The exhibit has not been filed here, and the amount of that payment is not known. However, it is clear that the testimony here in question would have at best summarized what was already before the court.

■ Appellants finally contend that the trial court should not have entered summary judgment against them because there was a genuine issue of material fact presented as to whether they had made reasonable repairs and whether the house constituted a dangerous building requiring demolition.

Clearly the dangerous building finding was not an issue before the court. That had been determined in the administrative hearing from which no appeal was taken. The issue before the court was compliance with the December 15 order. The trial court had the affidavit of Rice that his inspections between January 31 and March 28, 1977 revealed no change in the conditions which existed prior to the December hearing. Subsequent inspections between April 26 and August 22, 1977 showed only painting of portions of the house and partial repair of the porch roof. Mr. Atkins' counter affidavit does not contradict Rice's affidavit. It offers the weather and the illness of the contractor apparently as an excuse for failure to commence making repairs as directed. It states that a new roof had been placed on the house, but that it was done after the date of Rice's affidavit. It asserts that materials have been purchased for further repairs which Atkins proposed to make as his health and full-time working activities permitted.

On these affidavits the court could properly conclude that the directions in the December 15 order to commence repairs within 30 days and proceed to completion without unreasonable delay had not been met. Such a conclusion was supported by unassailable proof and showed that respondent was entitled, on that basis, to judgment as a matter of law.

The trial court attempted to avoid the harsh remedy of demolition of the property by offering to permit appellants to demonstrate a good faith effort to place the property in good repair. The trial court was patient and considerate beyond the requirements of the law but the appellants simply failed to cooperate. No reason has been demonstrated for this Court's reversal of the trial court's judgment.

Judgment affirmed.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

All of the judges concur.