Sylvester J. CALLIER,
Petitioner–Respondent,

v.

DIRECTOR OF REVENUE, STATE OF
MISSOURI, Respondent–Appellant.

No. 71414.

Supreme Court of Missouri,
En Banc.

Dec. 12, 1989.

William L. Webster, Atty. Gen., Sandra A. Mears, Sp. Asst. Atty. Gen., Jefferson City, for respondent-appellant.

Larry O. Denny, Kansas City, for petitioner-respondent.

ALMON H. MAUS, Special Judge.

Upon the basis of Section 302.272.5(2), the Director of Revenue refused to issue a school bus operator's permit to respondent Sylvester J. Callier. Callier filed a Petition for Review in the circuit court. Section 302.311, RSMo 1986. The circuit court declared Section 302.272[1] unconstitutional and ordered the Director to issue the permit. The Director appeals.

The issues in this case are presented with the following evidentiary background. Callier had been driving a school bus for B & J School Bus Service, Inc., for seven years. That company operated school buses under contract with a school district in Jackson County. He applied for a permit under Section 302.272. A record check established that in 1961 he had been convicted of wife and child abandonment and nonsupport. Section 559.350, RSMo 1959. As stated, because of the conviction the Director denied the permit.

Callier's Petition for Review alleged:

1. Section 302.272, as applicable to this case, became effective September 1, 1988. Basically, the section provides that no person shall operate a public school bus unless he holds a school bus operator's permit. The subsections of that statute relevant to this appeal read as follows.

 5. The director of revenue, to the best of his knowledge, shall not issue or renew a school bus operator's permit to any applicant:

 \* \* \* \* \* \*

 (2) Who has been convicted of any felony for an offense against the person as defined by chapter 565, RSMo; of any misdemeanor or felony for a sexual offense as defined by chapter 566, RSMo; of any misdemeanor or felony for prostitution as defined by chapter 567, RSMo, of any misdemeanor or felony for an offense against the family as defined in chapter 568, RSMo, of any misdemeanor or felony for pornography or related offense as defined by chapter 573, RSMo; or of any similar crime in any federal, state, municipal

4. That R.S.Mo., Section 302.272(5) [sic] is:

(a) A taking of Petitioner's permit to [sic] a school bus without due process of law.

(b) Is an ex post facto punishment of Petitioner for a 1961 criminal offense.

\* \* \* \* \* \*

(d) Is a denial of equal protection of the law.

At the hearing de novo, his attorney verbally objected because the offense for which Callier was convicted was not an offense set forth in Section 302.272.5(2). The circuit court apparently determined this objection and subsequent evidence constituted an amendment of the petition. Rule 55.-33(b). The relevant evidence consisted of the application and record of Callier's conviction.

The findings of the circuit court included the following. Callier had not been convicted of any offense listed in Section 302.-272.5(2). That if Section 302.272.5(2) was applicable to Callier, "it would be taking of Petitioner's right to operate a school bus, if otherwise properly licensed, without due process of law."

3. R.S.Mo. Section 302.272(5)(7) [sic] if applied to Petitioner would be a denial of the Equal Protection Clause of the Fourteenth Amendment of the United States, where compliance with Section

or other court of similar jurisdiction of which he has knowledge;

(3) Who has been convicted of any felony involving robbery, arson, burglary or a related offense as defined by chapter 569, RSMo; any felony or misdemeanor for violation of drug regulations as defined in chapter 195, RSMo; or any similar crime in any federal, state, municipal or other court of similar jurisdiction within the preceding ten years of which he has knowledge.

\* \* \* \* \* \*

7. Compliance with subsections 1 through 6 of this section shall be optional for school districts whose central administrative offices are located in counties of the third or fourth class. No school bus operator employed by such school district shall be required to comply with the provisions of subsections 1 through 6 of this section unless the board of education elects by written record to adopt compliance with this section.

302.272(5) [sic] is optional for school districts in third or fourth class counties, without any standards for exercising said option, and mandatory for school districts in first or second class counties.

Upon the basis of these findings, the circuit court ordered the Director to issue Callier the permit.

The parties in concert assert this appeal is within the exclusive jurisdiction of this Court because it involves the validity of a statute. Mo. Const. art. V, § 3. Nevertheless, this Court is "obliged and entitled to consider questions of jurisdiction, whether or not raised or advanced by the parties." *ABC Fireproof Warehouse Co. v. Clemans*, 658 S.W.2d 28, 30 (Mo. banc 1983).

■ This appeal involves the validity of Section 302.272 only if the record presents a "constitutional issue" of that validity. See *Stewart v. Director of Revenue*, 702 S.W.2d 472 (Mo. banc 1986). A constitutional issue is raised only when presented in accordance with rules of long standing. These rules are found in a multitude of cases. They have been succinctly summarized as follows.

It is firmly established that a constitutional question must be presented at the earliest possible moment "that good pleading and orderly procedure will admit under the circumstances of the given case, otherwise it will be waived."

*Meadowbrook Country Club v. Davis*, 384 S.W.2d 611, 612 (Mo.1964), quoting *Securities Acceptance Corp. v. Hill*, 326 S.W.2d 65, 66 (Mo.1959).

A party asserting the unconstitutionality of a statute or ordinance bears the burden of supporting that contention by at least relating his argument to the statute or ordinance and issue at hand. *Atkins v. Dept. of Building Regulations*, 596 S.W.2d 426, 434 (Mo.1980). To properly raise a constitutional question, plaintiffs are required to: (1) raise the constitutional question at the first available opportunity; (2) designate specifically the constitutional provision claimed to have been violated, such as by explicit reference to the article and section or by quotation of the provision itself; (3) state the facts

showing the violation; and (4) preserve the constitutional question throughout for appellate review.

*City of Eureka v. Litz*, 658 S.W.2d 519, 521 (Mo.App.1983). See also *Century 21 v. City of Jennings*, 700 S.W.2d 809 (Mo. banc 1985); *City of St. Louis v. Butler Co.*, 358 Mo. 1221, 219 S.W.2d 372 (banc 1949); *State ex rel. McMonigle v. Spears*, 358 Mo. 23, 213 S.W.2d 210 (banc 1948); *State ex rel. Allison v. Barton*, 355 Mo. 690, 197 S.W.2d 667 (banc 1946); *State ex rel. Spradling v. Bondurant*, 501 S.W.2d 527 (Mo.App.1973); and *Creamer v. Banholzer*, 694 S.W.2d 497 (Mo.App.1985).

■ With rare exception, unless a constitutional issue has been raised, a question of the constitutionality of a statute is not before the Court. "This determination is beyond the scope of the petition in the case. Constitutional questions must be properly raised by the parties. The question was not raised and was not properly before the trial court and is not properly for review here." *City of St. Louis v. Missouri Com'n on Human Rights*, 517 S.W.2d 65, 71 (Mo.1974). See also *State v. Wickizer*, 583 S.W.2d 519 (Mo. banc 1979); *State v. Flynn*, 519 S.W.2d 10 (Mo.1975). When a constitutional question has not been raised, a declaration of the invalidity of a statute on such a basis by a circuit court is erroneous and should be reversed. Moreover, the case does not involve the validity of a statute, and this Court does not, on that basis, have exclusive jurisdiction of an appeal. *St. Louis Teachers Ass'n v. Board of Education*, 456 S.W.2d 16 (Mo.1970).

It is not necessary to discuss all instances that constitute an actual or an apparent exception to these rules. See *City of St. Louis v. Butler Co.*, 219 S.W.2d at 372. It is sufficient to make the following observations. The doctrine of inherency has been abolished. *Christiansen v. Fulton State Hospital*, 536 S.W.2d 159 (Mo. banc 1976). When the public interest is involved, these rules do not prevent this Court from deciding constitutional questions. *State ex rel. McMonigle v. Spears*, 213 S.W.2d at 210. Nor do they impinge upon the authority of

a court to determine a criminal statute or a statute proscribing individual conduct is invalid within the strict limitations set forth in *State ex rel. Williams v. Marsh*, 626 S.W.2d 223 (Mo. banc 1982).

■ The relevant parts of the Petition for Review have been noted. The petition contains no designation of any constitutional section claimed to have been violated. It pleads no facts showing a constitutional violation. It is patently insufficient to raise a constitutional issue and a question concerning the validity of Section 302.272. "But certainly it should not be held a mere allegation that a given act, claim, right or statute 'violates the Constitutions of the United States and the State of Missouri,' or the 'applicable' provisions of those Constitutions, properly raises a constitutional question." *City of St. Louis v. Butler Co.*, 219 S.W.2d at 380 (emphasis added). In the absence of compelling reasons otherwise, this case should be transferred to the court of appeals with instructions to reverse the finding of the circuit court that Section 302.272 is invalid and to determine if Callier had been convicted of a crime listed in Section 302.272.5(2). *Christiansen v. Fulton State Hospital*, 536 S.W.2d at 159. Dictum in *Kansas City v. Hammer*, 347 S.W.2d 865 (Mo.1961) (finding jurisdiction to be in this Court because of the circuit court's unprovoked declaration of unconstitutionality) should not be followed.

However, to so transfer the case would create a degree of uncertainty concerning the validity of Section 302.272. Even though the question had not been raised, the circuit court found that section to be invalid for two reasons. It is in the public interest to determine if the entire act is invalid for the reasons expressed by the circuit court.

The circuit court first found that, if applicable to Callier, Section 302.272.5(2) would constitute a taking of Callier's right to operate a school bus without due process. This finding includes no facts upon which that conclusion was based. It is not certain if that finding refers to procedural or substantive due process. It is obvious, as demonstrated by the hearing upon the Petition for Review and this appeal, that Callier has been accorded procedural due process. *Division of Employment Security v. Smith*, 615 S.W.2d 66 (Mo. banc 1981).

" 'The substantive due process aspect of this test mandates that the ordinance have a rational relationship to a legitimate state interest.... Similarly, the equal protection clause requires that classifications drawn by the ordinance have a rational relationship to a legitimate state interest.' " *Simpson v. Kilcher*, 749 S.W.2d 386, 392 (Mo. banc 1988) (citations omitted) (quoting *American Motorcyclists Ass'n v. City of St. Louis*, 622 S.W.2d 267, 269 (Mo.App. 1981). As hereafter developed, Section 302.272 does bear a rational relationship to a legitimate state interest and does not deny substantive due process to Callier.

The circuit court's second finding was that Section 302.272 violated the Fourteenth Amendment to the Constitution of the United States because of an impermissible classification of counties.[2]

The proper analysis of a claim of statutory invalidity by reason of the "equal protection clause" is well established.

In equal protection claims the first step is to ascertain whether the statutory scheme "operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution...." If so, the statutory scheme receives strict judicial scrutiny to ascertain whether the classification is necessary to a compelling state interest. Id. If the classification neither burdens a suspect class, nor impinges upon a fundamental right, the only issue is whether the classification is rationally related to a legitimate state interest. In such a situation the burden is on the person attacking the classification to show that it does not rest upon any reasonable basis, and is purely arbitrary. Under this analysis a classifica-

---

**2.** Effective October 8, 1989, subsection 7 of Section 302.272 has been deleted. 1989 Mo.Legis. Serv. 1253 (Vernon). The provisions of Section 302.272 are now applicable to school districts in all counties.

tion will be upheld if any state of facts can be reasonably conceived which would justify it.

*Belton v. Board of Police Com'rs,* 708 S.W.2d 131, 139 (Mo. banc 1986) (citations omitted). See also *Collins v. Director of Revenue,* 691 S.W.2d 246 (Mo. banc 1985); *Simpson v. Kilcher,* 749 S.W.2d at 392; *Winston v. Reorganized Sch. Dist. R–2, Etc.,* 636 S.W.2d 324 (Mo. banc 1982). It is obvious that Section 302.272 does not burden a suspect class. *State v. Wright,* 751 S.W.2d 48, 51 (Mo. banc 1988); *State v. Williams,* 729 S.W.2d 197 (Mo. banc 1987), cert. denied, 484 U.S. 929, 108 S.Ct. 296, 98 L.Ed.2d 256. It is equally well established that the right to drive a school bus is not a fundamental right within the meaning of that analysis. *Stewart v. Director of Revenue,* 702 S.W.2d at 475, n. 2; *State Bd. of Registration v. Giffen,* 651 S.W.2d 475, 479 (Mo. banc 1983). The right of the legislature to establish classifications based upon population has long been recognized.

> The question of classification is primarily for the Legislature. If there is any reasonable basis for the classification made the court must sustain it.
>
> Population furnishes a proper basis for classification in a general law regulating counties which fall within the class when such classification is reasonable and germane to the purpose of the law.
>
> ...
>
> ... Where, as here, population is a reasonable basis for classification it is only necessary that the act apply to all places of the same population designated in the law....

*State ex rel. Fire Dist. of Lemay v. Smith,* 353 Mo. 807, 184 S.W.2d 593, 595 (banc 1945). See also *State ex rel. Atkinson v. Planned Industrial Expansion Authority,* 517 S.W.2d 36, 43–44 (Mo. banc 1975); *State ex inf. Barker v. Southern,* 177 S.W. 640, 643 (Mo. banc 1915).

 No extended discussion or citation of authorities is required to demonstrate the state has a legitimate interest in excluding those who disregard the needs of children from the operation of school buses. Moreover, there is a rational basis for the optional application of that section to school districts located in counties of the third or fourth class. The larger counties have a bigger pool of possible drivers from which to draw. Supervisors in the larger counties will often possess little or no personal knowledge of the character of applicants. Those supervisors cannot exercise as direct and immediate control as supervisors in the smaller counties. Subsection 302.272.7 did not cause that section to violate the equal protection clause of the Fourteenth Amendment to the Constitution of the United States.

Callier also argues that Section 302.272.-5(2) and (3) deny him equal protection because of Section 302.272.5(3) bars only those convicted within ten years of the offenses listed therein (offenses against property and drug offenses), as distinguished from Section 302.272.5(2) which places no time limitation upon convictions of the offenses listed therein. As stated, this constitutional issue was not raised. The circuit court made no determination of this issue which creates uncertainty concerning the constitutionality of Section 302.272. This Court need not and does not consider that argument. It is an argument of "under inclusion". Those interested in the question may consult *City of New Orleans v. Dukes,* 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); *Collins v. Director of Revenue,* 691 S.W.2d at 246; *State v. Ewing,* 518 S.W.2d 643 (Mo.1975); *State ex inf. Gavin v. Gill,* 688 S.W.2d 370 (Mo. banc 1985); *City of St. Louis v. Liberman,* 547 S.W.2d 452 (Mo. banc 1977), cert. denied, 434 U.S. 832, 98 S.Ct. 116, 54 L.Ed.2d 92.

Also as stated, the circuit court found Callier had not been convicted of an offense listed in Section 302.272.5(2). The Director's appeal from that determination would properly be to the court of appeals. Nonetheless, in the interests of judicial economy it will be decided by this Court. *Christiansen v. Fulton State Hospital,* 536 S.W.2d at 159.

 Section 302.272.5(2) includes "an offense against the family as defined in chapter 568 ... or of any similar crime...."

Chapter 568 does not define any offense in the precise terms used in Section 559.350, RSMo 1959. However, Section 568.040 does define the offense of "criminal non-support". The elements of the offense so defined are virtually identical to an offense of abandonment and failure to support defined in Section 559.350, RSMo 1959. Callier had been convicted of a "similar crime" as an offense defined by chapter 568. The contrary determination by the circuit court is erroneous.

The judgment of the circuit court is reversed and the Petition for Review is denied.

RENDLEN, HIGGINS, COVINGTON and BILLINGS, JJ., concur.

ROBERTSON, J., concurs in result.

BLACKMAR, C.J., dissents in separate opinion filed.

HOLSTEIN, J., not participating because not a member of the Court when the case was submitted.

BLACKMAR, Chief Justice, dissenting.

The petitioner has been deprived of the right to pursue his usual occupation of school bus driver because of a misdemeanor conviction in 1961. So drastic an interference with a basic liberty should be countenanced only if the statutory language is compelling. Statutes restricting the right to earn a living, furthermore, raise serious due process considerations, *Schware v. Board of Law Examiners*, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957), and should be construed strictly. The action of the director, in my opinion, is not supported by the statutory authority relied upon. I also believe that the due process arguments adduced have merit. For these reasons, I would affirm the judgment of the circuit court.

### I. Jurisdiction

I cannot understand the statement in the principal opinion that jurisdiction of the appeal is properly in the court of appeals. Article V, Section 3 gives us jurisdiction in "all cases involving the validity of ... a statute ... of this state...." The circuit court held the statute relied on by the director invalid, on constitutional grounds. The director necessarily has to appeal to this Court if he is to obtain relief against the circuit court's order. If appeal were taken to the court of appeals, I am confident that that court would promptly transfer the case here, because of the apparent constitutional problem presented. I can see no merit in a holding which might lead a person in the position of this appellant to take his appeal to the court of appeals, argue about whether the constitutional points were sufficiently raised, and then face possible transfer.

The problem presented by this case was expressly considered in *City of Kansas City v. Hammer*, 347 S.W.2d 865 (Mo. 1961), in which the Court stated as follows:

where the constitutionality of a municipal ordinance under the federal and state constitutions is embraced within the issues of law tendered at the trial, the jurisdiction on appeal is in the supreme court.

*Id.* at 867. The Court goes on to say that:

Even though the constitutionality of the ordinance were beyond the issues submitted and hence its determination unauthorized, the appellate jurisdiction would still be in this court because the judgment rendered purported to decide the question of constitutionality.

The principal opinion brushes off these statements as dicta, and states that they should no longer be followed. If they be dicta, they are nevertheless well considered and practical. I see no necessity for holding that they should no longer be followed, especially when the court ultimately decides to retain the case. The procedural holdings of the principal opinion could just as well be described as dicta, under present circumstances.

Our jurisdiction would not be lost even if it be concluded that the constitutional points had been defectively presented to the trial court. We have consistently held that administrative agencies and tribunals have no authority to decide claims of un-

constitutionality.[1] When the petitioner was unsuccessful at the administrative level he filed a petition for review in circuit court asserting, among other things, that the statute relied on by the director amounted to "(a) taking of Petitioner's permit to a school bus without due process of law...." The circuit court apparently considered this ground to be adequate because it granted the relief sought. Had the petition for review been attacked on motion, or had the trial judge considered it insufficient, it could have been amended in response to the objections.[2] The allegation, coupled with the trial court's ruling, surely gives us jurisdiction to affirm or reverse the judgment of the circuit court.

We may and should affirm if the judgment below is correct, even though the constitutional points may not have been artfully phrased in the petition for review. *State ex rel. Williams v. Marsh*, 626 S.W.2d 223, 225 (Mo. banc 1982), expressly sanctions a constitutional ruling ex parte, on the basis of the trial judge's oath to support the constitutions. The same principle would justify a decision on the merits in this case, both in the trial court and here.

Nor do I perceive any deficiency in the petition for review. It is said that there is "no designation of any constitutional section claimed to have been violated." Is not the mention of "due process of law" a sufficient designation? When the applicable constitutional sections may easily be located from the reference, the mention should be sufficient. *Cf. City of St. Louis v. Friedman*, 358 Mo. 681, 216 S.W.2d 475 (1949). The principal opinion also says that the petition for review "pleads no facts showing a constitutional violation." The petition may properly be read as charging that the statute, if construed so as to disqualify the petitioner from driving a school bus, deprives him of the right to earn a living without due process of law. Here again any greater specification could have been obtained on motion. It is good to follow sound procedure and to prepare pleadings carefully, but litigants should not be obliged to jump through hoops to invoke the federal or the state constitution. I am confident that counsel and the trial court understood the point perfectly well. Important constitutional rights should not depend on technicalities.

The principal opinion compounds the confusion by stating that the case "should be transferred to the Court of Appeals with instructions ..." So far as I have been able to determine, such an expedient has never been followed in a case initially appealed to this Court. If we have jurisdiction to determine a part of the case we have jurisdiction to decide the whole case. A possible decision would be to reverse the trial court's constitutional holding, on the ground that the plaintiff's pleadings did not properly present the constitutional issues.[3] Such a holding would be a decision in the case. Jurisdiction connotes the power to make any appropriate decision, including a procedural decision.

I write at length because I believe that the principal opinion unnecessarily produces confusion, in a case in which the ultimate decision is to retain the case. It overturns the only guideposts we have, without a clear indication of what is put in their place. Perhaps the Court can straighten the problem out in the next case which presents it, but we will have to write on a clean slate in that case. Inasmuch as we have the power to retain the case, and choose to do so, it is not necessary to discuss the jurisdictional problem at length.

1. *City of Joplin v. Industrial Commission of Missouri,* 329 S.W.2d 687 (Mo. banc 1960).

2. I can see no virtue, in a constitutional government, in a holding that a constitutional challenge is cast in stone and unamendable, so that a failure adequately to present the constitutional points in the initial effort bars them for all time. An analogy would be that a petition which fails to state a cause of action will toll the statute of limitations, so that it may be corrected by amendment after the statute has run. *Koerper & Co., Inc. v. Unitel International, Inc.,* 739 S.W.2d 705 (Mo. banc 1987); Mo.R.Civ.P. 55.33(c); *see also* Fed.R.Civ.P. 15(c).

3. I have found no case in which the trial court ruled constitutional questions colorably presented, and the appellate court reversed because of the manner of presentation.

## II. The Statutes

The director relies on § 302.272.5(2), RSMo 1986, providing that a license to drive a school bus may not be issued to a person

Who has been convicted of any felony for an offense against the person as defined by chapter 565, RSMo; of any misdemeanor or felony for a sexual offense as defined by chapter 566, RSMo; of any misdemeanor or felony for prostitution as defined by chapter 567, RSMo; of any misdemeanor or felony for an offense against the family as denied in chapter 568, RSMo; of any misdemeanor or felony for pornography or related offense as defined by chapter 573, RSMo; or of any similar crime in any federal, state, municipal or other court of similar jurisdiction of which he has knowledge;

This statute was adopted in 1986.

The petitioner was not convicted of a violation of chapter 568, which was newly enacted in 1977 as a part of the Missouri version of the Model Penal Code. His conviction, in 1961, was under § 559.353, RSMo 1959, which reads as follows:

Any man who, without good cause, fails, neglects or refuses to provide adequate food, clothing, lodging, or medical or surgical attention for his wife; or any man or woman who, without good cause, abandons or deserts or, without good cause, fails, neglects or refuses to provide adequate food, clothing, lodging, or medical or surgical attention for his child born in or out of wedlock, under the age of sixteen years, or if any person, not the father or mother, having the legal care or custody of such minor child, without good cause, fails, refuses or neglects to provide adequate food, clothing, lodging, or medical or surgical attention for the child, whether or not in either such case the child by reason of such failure, neglect or refusal actually suffers physical or material want or destitution, is guilty of a misdemeanor and upon conviction thereof shall be punished as provided by law.

Had the legislature intended that convictions under repealed § 559.353 be among the disqualifications of § 302.272.5, it could easily have said so. When a statute may operate to disqualify a person from pursuing his or her regular occupation, it is not too much to ask that it speak unequivocally.

The director points to the last portion of 302.272.5(2), providing disqualification for conviction of "any similar crime in any federal, state, municipal or other court of similar jurisdiction...." Assuming arguendo that this clause could be applicable to a conviction in a court of the state of Missouri, even though not well designed for the purpose, I do not believe that the director has demonstrated that the petitioner had been convicted of a "similar crime."

The nearest equivalent to repealed 559.353 is § 568.040.1, RSMo 1986, reading as follows:

A husband commits the crime of nonsupport if he *knowingly* fails to provide, without good cause, adequate support for his wife; a parent commits the crime of nonsupport if such parent knowingly fails to provide, without good cause, adequate support which such parent is legally obligated to provide for his minor child or his stepchild. (Emphasis supplied)

This section is not similar to 559.353 because it has a mental element, "knowingly", while the repealed section apparently places the burden on the defendant to show "good cause." This is not a quibbling point. The comment following § 568.040 shows that the drafters felt that matters of nonsupport should "in the abstract, be left to contempt of court and the Uniform Reciprocal Enforcement of Support Act ..." rather than being dealt with by the criminal law. The note goes on to state that criminal sanctions may be needed as "the only effective means of dealing with certain situations." The addition of a mental element is quite appropriate to separate criminal offenses from the noncriminal. A statute with a mental element is not similar to a statute without a mental element, especially in a situation in which strict construction should be required. The present statute connotes a substantially greater de-

gree of culpability than the one under which the plaintiff was convicted.

So I would affirm the circuit court, on the ground that the petitioner was not disqualified under the statute relied upon.

## III. Due Process

I also believe that the circuit court properly held that the denial of the license was invalid on due process grounds. We usually defer to the legislature on matters of this kind and sustain legislation even though it may appear to us to be improvident or even ridiculous. *Coldwell Banker v. Mo. Real Estate Comm.*, 712 S.W.2d 666 (Mo. banc 1986). But a statute that deprives a person of the right to pursue a regular occupation must pass a test of reason. I believe that the present statute, if construed to relate to the petitioner, fails of this test.

In *Schware v. Board of Bar Examiners*, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957), the Supreme Court of the United States unanimously held that an applicant could not be deprived of the right to take the bar examination because of his long-abandoned membership in the Communist Party. The opinion states at pp. 238–9, 77 S.Ct. at p. 756:

> A State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment.... A State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar, but any qualification must have a rational connection with the applicant's fitness or capacity to practice law....

Our nation, in contrast to some others, recognizes freedom of choice of occupation. Work is a right, not a privilege conferred by the government. It is within the compass of liberty, as used in the due process clauses. Restrictions are subject to careful scrutiny to ensure that they are reasonably related to a proper public purpose and no more stringent than necessary.

The apparent, and salutary, purpose of the licensing statute is to protect school children against bus drivers who may harm them. Most of the sections of chapter 568 clearly involve crimes that demonstrate possible danger (bigamy, incest, sexual abuse, pornography). Even if the criminal nonsupport provisions of chapter 568 may be said to involve similar considerations, the required mental element must surely constitute an essential part of the justification. It is most difficult to see how a person who was convicted many years ago of violation of the repealed § 559.353, in which no mental element is required, and who has pursued the occupation of bus driver for seven years, presents any substantial danger to the child passengers. Add, to this the circumstance that the disqualifying sections provide no means of remission or requalification, and the licensing statute, at least as held applicable to this petitioner, is bereft of rationality.[4]

The argument for deference to the legislature's view of the public interest is especially weak when the legislature has spoken in generalities, listing a whole chapter of offenses rather than a particular statute and making no reference to repealed statutes. I am confident that most legislators would be amazed at the thought that they had deprived this petitioner of his regular occupation.

Questions of "substantive due process" have been much discussed recently. Seldom will economic regulation be struck down as violative of due process. *Williamson v. Lee Optical Company*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *Ferguson v. Skrupa*, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963). The present regulation, however, is not purely economic. It goes to one's right to earn a living. I rather agree with the approach taken in the concurring opinions of Justice Harlan and Justice White in *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). They suggest that a statute which interferes with important personal rights must be struck down if it is utterly unreasonable.

---

4. The respondent was a minor at the time of the offense giving rise to the 1961 conviction.

It is fashionable in some quarters to extol judicial restraint. Truly judges must guard against substituting personal preference for sound judicial method. But judicial scrutiny of legislation is inherent in our constitutional system, and this sometimes requires the use of the broad general clauses of the constitution to strike down legislation which is unjustifiably oppressive. It is not always an answer to tell aggrieved citizens that they may appeal to the legislature. It is doubtful that a person such as this plaintiff can attract substantial political support for his cause. This is the rare case in which the courts should apply the due process clause to protect citizens against arbitrary and oppressive legislative action.

*Pollard v. Board of Police Commissioners,* 665 S.W.2d 333 (Mo. banc 1984); *cert. den.* 473 U.S. 907, 105 S.Ct. 3534, 87 L.Ed.2d 657 (1985), may be added to the citations in the principal opinion, to refute the equal protection claim. The legislature might have thought that drivers would be harder to find, or easier to watch, in smaller counties. But in determining the overall reasonableness it is appropriate to note that the legislature did not consider a total exclusion necessary and would allow some persons with records like the petitioner's to drive school buses.

Likewise the *"ex post facto"* argument is not supported, because the underlying statute is not designed as punishment, but rather for the protection of children. But, because of the *ex post facto* clause, the director must justify the statute solely on the ground of protection of the public. Any claim that it could be supported as additional punishment for crime obviously cannot be made for crimes committed prior to enactment of the statute.

The trial judge properly perceived the vice in the statute. There is absolutely no reason to deprive this driver of his means of obtaining a living. The judgment should be affirmed.