**CITY OF CHESTERFIELD, Appellant,**

**v.**

**DIRECTOR OF REVENUE, Respondent.**

**No. 73156.**

Supreme Court of Missouri,
En Banc.

June 11, 1991.

Douglas B. Beach, St. Louis, for appellant.

William L. Webster, Atty. Gen., Carole L. Iles, Asst. Atty. Gen., Jefferson City, for respondent.

HOLSTEIN, Judge.

Following an adverse decision of the Administrative Hearing Commission, the City of Chesterfield (City) seeks judicial review. Section 621.189, RSMo 1986. The City attacks the constitutionality of § 66.620, RSMo Cum.Supp.1990. This Court has jurisdiction of the appeal. *Mo. Const. art. V, § 3.* Affirmed.

Since 1977, the statutes found at § 66.-600, *et seq.*, have provided a mechanism for the collection and distribution of a county sales tax in St. Louis County for the benefit of both incorporated and unincorporated areas of the county. The statutory provision under attack, § 66.620, has been amended on five separate occasions.[1] In its present form the statute divides governmental entities entitled to distributions of the tax into group A and group B. In group A are all cities, towns and villages in St. Louis County that had a city sales tax

---

1. *See* L.1977 S.B. 234 § 5, A.L.1979 H.B. 717, A.L.1980 S.B. 693, A.L.1983 H.B. 273, A.L.1984 H.B. 1214 & 1319, A.L.1987 H.B. 210.

approved by the voters of such municipality on the day prior to the effective date of the county sales tax. Group B consists of all cities, towns and villages not having a city sales tax approved by the voters and also consists of unincorporated areas in St. Louis County.

After the taxes are collected, the proceeds of the sales tax are distributed to the group A communities based on the location in which the sale was consummated. The balance is divided among the cities and St. Louis County comprising group B. The amount paid to a city in group B is calculated based upon the ratio that such city's population bears to the entire group B population. Similarly, the amount paid to St. Louis County is calculated based upon the ratio that the population of unincorporated areas in the county bears to the entire group B population.

Since the 1984 amendment, the statute has also provided that if unincorporated areas were annexed by any city or if a new municipality was incorporated, those areas would remain a part of group B, and their share of the taxes would be computed on a population basis rather than the point of sale basis. § 66.620.3. After the 1984 amendment, no provision existed for a newly incorporated city to become a part of group A, although the statute provides that a group A city may be permitted to move to group B and decennially, beginning in 1980, choose to move back to group A. § 66.620.2.

On June 1, 1988, the City of Chesterfield was incorporated as a third class city. On January 17, 1990, the City of Chesterfield requested the Director to begin distribution to it on a point of sale basis as opposed to a population basis. That request was denied on February 5, 1990. On March 1, 1990 an appeal was filed with the Administrative Hearing Commission. The Commission decided in favor of the Director. City seeks review of the Commission's decision.

The brief on appeal has one point relied on, but in effect raises two issues. The first is that § 66.620 violates due process and equal protection principles. The second issue is that § 66.620 creates subclasses of municipalities within the same class, in violation of article VI, § 15 of the Missouri Constitution. As intriguing as these questions may be, the answers must await another day.

■ Both state and federal courts have repeatedly held that municipalities and other political subdivisions established by the state are not "persons" within the protection of the due process and equal protection clauses of the United States Constitution. *Williams v. Mayor and City Council of Baltimore*, 289 U.S. 36, 40, 53 S.Ct. 431, 432, 77 L.Ed. 1015 (1933); *City of Trenton v. State of New Jersey*, 262 U.S. 182, 192, 43 S.Ct. 534, 538, 67 L.Ed. 937 (1923); *State ex rel. Brentwood School District v. State Tax Comm'n*, 589 S.W.2d 613, 615 (Mo. banc 1979); *State ex rel. Mehlville Fire Protection Dist. v. State Tax Comm'n*, 695 S.W.2d 518, 521 (Mo.App. 1985). The City candidly acknowledges this is the law. However, the City responds by arguing that § 621.050, RSMo 1986, gives the City a right of appeal from the Director of Revenue's decision. Because the statute creates a "legal right," an invasion of that right creates standing. The argument continues by asserting that standing is established where the party invoking jurisdiction has a "personal stake in the controversy." *See Flast v. Cohen*, 392 U.S. 83, 101, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 (1968). The flaw in the City's argument is twofold. First, the City's statutory right to appeal does not extend to the City the constitutional protections ordinarily enjoyed only by individual citizens. Second, the City has no "personal" due process or equal protection rights at stake in the controversy over the distribution of tax receipts. Therefore, the City fails to meet the standing test as described in *Flast*.

■ The second question raised in the brief is whether § 66.620 violates the requirement of article VI, § 15 of the Missouri Constitution that there shall be no more than four classes of cities and towns and "municipal corporations of the same class shall possess the same powers and be subject to the same restrictions." The specific constitutional provision was not men-

tioned in the City's petition before the Administrative Hearing Commission. The stipulation of the parties, transcript and record made before the Administrative Hearing Commission also make no mention of article VI, § 15 of the Missouri Constitution and no reference is made to the language found in that constitutional provision. Finally, the petition for review filed with this Court only complains that the statute in question violates due process and equal protection clauses of the United States Constitution and similar provisions of Missouri's Constitution. The first mention of Missouri Constitution article VI, § 15 is in the appellant's brief.

■ The general rule is that constitutional questions are deemed waived that are not raised at the first opportunity consistent with good pleading and orderly procedure. *Union Elec. Co. v. Dir. of Revenue*, 799 S.W.2d 78, 80 (Mo. banc 1990). Attacks on the constitutionality of a statute are of such dignity and importance that raising such issues as an afterthought in the brief on appeal will not be tolerated. *Land Clearance for Redevelopment Auth. of Kansas City, Missouri v. Kansas Univ. Endowment Ass'n*, 805 S.W.2d 173, 176 (Mo. banc 1991).

■ The City's response is to invoke an exception that "[w]hen the public interest is involved, these rules [regarding preservation of constitutional claims] do not prevent this Court from deciding constitutional questions," citing *Callier v. Dir. of Revenue*, 780 S.W.2d 639, 641 (Mo. banc 1989), and *State ex rel. McMonigle v. Spears*, 358 Mo. 23, 25, 213 S.W.2d 210, 212 (banc 1948). Appellant's brief fails to elucidate further what compelling public interest justifies abrogation of the rule requiring preservation of constitutional claims at the first opportunity, and no such public interest is readily identifiable.

Even if some public interest were discernible, the exception is not applicable here. The "public interest" exception noted in *Callier* was not followed in that case. *McMonigle* was an original prohibition action to halt an election in which a constitutional question arose relating to the validity of the statute that authorized the election. The respondent argued that the con-

stitutionality of the statute should have been raised in an earlier proceeding before the circuit court in which the relators sought to enjoin the election. This Court relied largely on *State ex rel. Conran v. Duncan*, 333 Mo. 673, 63 S.W.2d 135 (banc 1933), in deciding to consider the constitutional question because "the public interest" was involved. *McMonigle*, 213 S.W.2d at 212. *Conran* also applied the "public interest" exception, but in doing so placed great weight on the fact that the proceeding was an original prohibition proceeding and the pleadings of the parties had "joined issue" on the constitutional question. *Conran*, 63 S.W.2d at 138. The case now under consideration is not an original proceeding involving an extraordinary writ and the pleadings do not mention article VI, § 15 of the Missouri Constitution, much less "join issue" on the question. In addition, the Director's brief objects to the Court considering a constitutional question raised for the first time in an appellate brief.

Finally, both *McMonigle* and *Conran* rely on Judge Ellison's concurring opinion in *Ex parte Bass*, 328 Mo. 195, 40 S.W.2d 457 (banc 1931). While the concurring opinion in *Bass* discusses various rationales for reviewing constitutional questions that are not timely preserved, it relies primarily on the exception known as the "inherency doctrine." *Bass*, 40 S.W.2d at 459 (Ellison, J., concurring). The doctrine of inherency has been abolished. *Callier*, 780 S.W.2d at 641. Therefore, the viability of the "public interest" exception is highly doubtful.

From the above, the Court concludes that the City lacks standing to invoke due process or equal protection provisions of the state and federal constitutions and has failed to preserve its claim that § 66.620 violates article VI, § 15 of the Missouri Constitution. The decision of the Administrative Hearing Commission is affirmed.

BLACKMAR, C.J., ROBERTSON, RENDLEN, HIGGINS, and COVINGTON, JJ., and BRECKENRIDGE, Special Judge, concur.